UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC; and DONATA BANKS, <br><br> Plaintiff, <br><br> vs. <br><br> VICKI NEW; KIRKPATRICK MANAGEMENT COMPANY, INC.; and TWIN CREEKS HOMEOWNERS ASSOCIATION, INC., <br><br> Defendants. | ) Case No. 1:20-cv-1176 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT; JURY TRIAL DEMAND**

**I. INTRODUCTION**

1.     Plaintiffs Fair Housing Center of Central Indiana, Inc ("Fair Housing Center"), an organization dedicated to ensuring equal opportunity in housing, and Donata Banks, an African American woman, bring this action against Defendants for injunctive, declaratory and monetary relief for discrimination on the basis of race and national origin in violation of the Fair Housing Act, the Civil Rights Act of 1866, and related, supplemental state law claims.

**II.     JURISDICTION AND VENUE**

2.     This Court has subject matter jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C §3613. This Court has supplemental jurisdiction to consider plaintiffs' state law claims pursuant to 28

1

U.S.C. § 1367 because those claims are related to plaintiffs' federal law claims and arise out of a common nucleus of facts. Plaintiffs' state law claims are related to plaintiffs' federal claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

3.    Venue is proper under 28 U.S.C. §1391 and Local Rule 3-1 because the events alleged in this complaint occurred in Marion County, Indiana.

### III.    PARTIES

4.    Plaintiff Fair Housing Center of Central Indiana, Inc. ("the Fair Housing Center") is a private, nonprofit Indiana corporation working to ensure equal housing opportunities by eliminating housing discrimination through advocacy, enforcement, education, and outreach. It is the only private, nonprofit fair housing agency in the State of Indiana. Its offices are located in Indianapolis. Since August 2018, the Fair Housing Center has diverted significant staff time and resources to investigate discrimination and harassment of residents living in the Twin Creeks subdivision in Indianapolis.

5.    Plaintiff Donata Banks and her family are African American. Since July 2016, Banks and her family have rented a single-family dwelling located at located at 6314 Twin Creeks Drive in Indianapolis. The dwelling is located in the Twin Creeks subdivision and governed by the Twin Creeks Homeowners Association.

6.    Defendant Vicki New is a Caucasian woman. From March 2015 through December 2018, Mrs. New, along with her husband James New, also Caucasian, owned and resided in the single-family dwelling located at 6315 Twin Creeks Drive in Indianapolis. The dwelling is located in the Twin Creeks subdivision and governed by the Twin Creeks Homeowners Association.

7.    Defendant Twin Creeks Homeowners Association, Inc. ("the HOA"), is a domestic nonprofit corporation with its principal address in Indianapolis. The

HOA governs approximately 226 dwellings within the communities of Brookstone and Fieldstone (collectively "Twin Creeks") in Indianapolis, including all dwellings relevant in this action. As a homeowners' association, the HOA is subject to the Fair Housing Act, 42 U.S.C. § 3601 et seq.

8.      Defendant Kirkpatrick Management Company, Inc. ("Kirkpatrick") is a for-profit property management firm with its principal address in Indianapolis. Kirkpatrick has managed Twin Creeks on behalf of the HOA since July 2009 and at all times relevant in this action.

9.      In committing each of the discriminatory or unlawful acts alleged in this complaint, each defendant acted as the agent or co-conspirator of each other defendant.

## IV.    FACTS

### A.    Introduction

10.     Twin Creeks is a residential subdivision of approximately 226 single-family homes located in northwest Indianapolis.

11.     Defendant Vicki New lived in a dwelling located in Twin Creeks from approximately March 2016 to December 2018. During that time, Ms. New engaged in a pattern and practice of harassing, taunting, and threatening African American and Latino residents, guests, and contractors and creating a racially hostile environment in Twin Creeks. Defendants HOA and Kirkpatrick knew about Ms. New's discriminatory housing practices and failed to take sufficient action to correct or end the discriminatory conduct towards plaintiff Donata Banks and other residents of Twin Creeks.

### B.    Donata Banks

12.     In July 2016, Donata Banks, her husband, her mother, and her minor daughter moved into a single-family rental home located at 6314 Twin Creeks Drive, across the street from Vicki New and her husband, James New.

3

13.	In August 2016, shortly after the Banks moved in, Ms. New began to verbally harass the Banks family. Ms. New called Banks a "black n----- bitch" and commented that the neighborhood was "better before all of you n----- moved in," or words to that effect.

14.	On one occasion, Ms. Banks was inside her house and heard a commotion outside. She looked out and saw her husband and Ms. New arguing. Mr. James New and an African American neighbor who lived on the same block were also engaged in the argument. Ms. Banks heard Ms. New yell, "this neighborhood was so much better without you people," or words to that effect.

15.	Ms. Banks subsequently learned that the incident was sparked by Ms. New yelling at an African American neighbor who was driving in her car. Ms. New yelled, "slow down you n----- bitch," or words to that effect.

16.	Ms. New frequently followed Ms. Banks' daughter and other children of color to the bus stop.

17.	On several occasions, Ms. New called Ms. Banks and her daughter using the slur, "n----- bitch."

18.	On or about August 22, 2017, Ms. Banks witnessed Ms. New yelling at a Latino worker who was inspecting the roof of another Twin Creeks house. Ms. New yelled that she "can't stand none of you n------s, fags, and Mexicans." Mr. James New then came outside and called Mr. Banks a "n-----". Ms. Banks called the police.

19.	On several occasions when Ms. Banks' daughter and her friends sat on their front porch, Ms. New yelled "shut your stupid mouths up" and other words to that effect. This occurred frequently during Spring 2018. Additionally, during a Banks family reunion, Ms. New shouted at the visitors – who were African American – to go inside.

20.    Ms. Banks and her family observed and heard about Ms. New's discriminatory treatment of other neighbors based on their national origin, and race, which contributed to the hostile environment. For example, in 2018, after a Latino couple moved into the house next door to the News' house, Ms. Banks observed Ms. New yelling at the Latino couple from her yard. Ms. New called the Latino woman "fat bitch," and a "piece of shit…who does not deserve to be a mother," or words to that effect. In the same incident, Ms. New said "you wouldn't be alive if my grandfather were still alive," or words to that effect. Ms. New said, "[t]hat fucking Mexican is going to be dead," or words to that effect, and threatened to "wrap a hose around your neck," or words to that effect.

21.    In or about August of 2018, Ms. Banks gathered with several other residents of Twin Creeks to discuss the News' discriminatory harassment with the HOA and Kirkpatrick. Residents reported that the News used racial slurs and race-based threats of violence toward them. The representatives of the HOA and Kirkpatrick stated that they did not know what they could do to stop the harassment.

22.    Approximately two weeks after the first meeting, a second meeting with residents and the Board of Directors of the HOA took place. The HOA's attorney and representatives of Kirkpatrick did not attend.

23.    On August 28, 2018, two local news stations -- TheIndyChannel.com and WISH-TV -- published stories about the News' harassment of neighbors at Twin Creeks. The news stories included a video of Ms. New threatening and attacking her Latino neighbors, as described above.

24.    On August 29, 2018, Vicki New was arrested and charged with criminal trespassing, battery resulting in bodily injury, and criminal mischief. Ms. New posted cash bond and was released from Marion County Jail September 1,

2018. The charges were dismissed pursuant to a diversion agreement on August 8, 2019.

25.     On September 4, 2018, following the news stories, the HOA finally issued a cease and desist letter to Vicki New, describing some of the incidents reported to the HOA and affirming that the News' actions constitute a violation of the HOA's binding covenants, for which enforcement action may be taken. Defendants asserted in their letter that this was a "zero tolerance" demand, meaning a single incident in violation of the demand would trigger legal action against the News.

26.     Despite the cease and desist letter issued by the HOA, Ms. New continued to harass plaintiff Donata Banks and her family until Mr. and Mrs. New sold and moved out of their Twin Creeks home in or about December 2018.

27.     Defendants failed to take prompt action to correct and end the News' discriminatory harassment and interference with residents of Twin Creeks. Defendants were obligated and empowered to act to end the News' discriminatory housing practices, but refused or failed to do so until incidents were broadcast by local media and they began to receive negative attention for their lack of action.

C.     Other Evidence of discrimination based on race and national origin at Twin Creeks

### 1.     Resident "LQ"

28.     In August 2016, LQ purchased and moved into the house located at 6303 Twin Creeks Drive, three houses away from Vicki and James New. LQ and her family are of Mexican national origin and identify as Hispanic or Latino. From September 2016 through October 2017, LQ and her mother ran a family daycare out of their Twin Creeks house. The daycare was licensed and permitted pursuant to Indiana law for the duration of its operation.

29.     About one week after LQ purchased her Twin Creeks home, Ms. New came to LQ's house and asked her what she was doing in the house at night. Ms. New introduced herself as a representative of the HOA.

30.     Soon after Ms. New came to question LQ, LQ contacted Mike Patterson, the property manager at the time and an agent of Kirkpatrick, and asked if Ms. New was in fact a representative of the HOA. Patterson said that Ms. New was not a representative of the HOA, but that Ms. New was "a problem for the community," or words to that effect. He suggested that LQ call the police if confronted by Ms. New.

31.     On September 5, 2016, Ms. New came to LQ's door around the time that many children were being picked up from LQ's in-home daycare. Ms. New yelled through the closed door, asking if there were children in the house and screaming that it was illegal to operate a business in the neighborhood. Ms. New told LQ to open the door or she would "regret it," or words to that effect. Ms. New did not move away from the door, and LQ feared that she, her clients, and her clients' children would be trapped inside. Ms. New yelled that LQ's clients were "a piece of shit and do not belong here," or words to that effect. LQ called the police out of fear for her safety and the safety of others in her home. When LQ told Ms. New through the door that she was calling the police, Ms. New left.

32.     On or around September 6, 2016, LQ contacted Kirkpatrick Management a second time to find out if it was illegal to operate a business in the neighborhood, as Ms. New had suggested. Kirkpatrick told her to continue calling the police if Ms. New bothered her.

33.     Ms. New repeatedly attempted to interfere with LQ's daycare business. Ms. New called the police and claimed that LQ was running an illegal business. Soon after, a Better Business Bureau inspector visited LQ's daycare in response to a call from a neighbor reporting that the daycare was an illegal

business. The inspector reviewed LQ's license and closed the complaint. Shortly thereafter, LQ's daycare received a surprise visit from the manager of the local licensing agency in response to multiple calls from a neighbor, believed to be Vicki New, alleging that the children in LQ's daycare were being mistreated and asking that LQ's license be rescinded. The agency manager found the allegations to be false.

34.    Around the same time, a CPS investigator also visited to investigate allegations by a neighbor, believed to be Vicki New, that LQ was abusing children at the daycare. The CPS investigator interviewed the children at the daycare and observed their educational activities and lunch. That investigation also was closed as unfounded. Ms. New then called the police, falsely reporting that children had been left alone outside. When the police came, they found LQ supervising the children in the backyard and told her about the call they had received. Each of these inspections interfered with the day-to-day operation and mission of LQ's day care and harmed LQ's professional reputation.

35.    Ms. New's harassment of LQ continued. When LQ went outside to pick up the mail or care for the lawn, Ms. New was frequently nearby. She repeatedly told LQ to "go back to [her] country," and that she "[does] not belong here," or words to that effect.

36.    Ms. New also regularly harassed and intimidated LQ's clients. When clients arrived to pick up their children, Ms. New sometimes photographed them and told them that CPS was going to come take their children away because the daycare was an "illegal business." Ms. New used racial slurs toward a biracial couple with a child in LQ's daycare, including calling the mother "a piece of white trash" in front of her children. Ms. New then contacted the father's employer to falsely claim that he did not take proper care of his children. Due to this harassment by Ms. New, the couple decided to move their children to a different

daycare. Within the next two weeks, two other families left the daycare out of fear of Ms. New.

37.    On October 26, 2017 LQ made the difficult decision to close the daycare as a direct result of the harassment, discrimination, and defamatory statements made by Ms. New.

38.    Even after the closure of the daycare, Ms. New still regularly yelled at LQ to "go back to her country" and other words to that effect.

39.    LQ contacted Kirkpatrick Management Company a third time to ask for action to be taken against New for her discriminatory conduct. A woman who identified herself as the property manager's secretary stated that Kirkpatrick Management could not do anything to help. She added that the manager – Vincent White – was very busy.

### 2. Resident "LR"

40.    In March 2017, LR and her family purchased and moved into a single-family home in Twin Creeks, next door to defendant Vicki New. LR and her family are of Mexican national origin and identify as Hispanic or Latino. Shortly after LR and her family moved in, Ms. New began a campaign of harassment, threats, and intimidation against LR and her family based on their national origin.

41.    Ms. New made comments about LR's ethnicity. At one point, Ms. New yelled at LR and her family, "Mexicans, you should not be here. Move back to your country!" When family or friends came to visit LR, Ms. New photographed them, making them feel uncomfortable.

42.    On June 17, 2018, LR received a letter from the Indiana Department of Child Services informing her that they received a complaint of "suspected abuse and/or neglect" of her child, believed to be made by Vicki New. The agency investigated and closed the complaint as unfounded.

9

43.     In August of 2018, Ms. New's harassment and insults towards LR and her family escalated to explicit threats. LR began video recording Ms. New's harassment and threats on her cell phone.

44.     On August 3, 2018, LR recorded Ms. New threatening to call the Department of Child Services to take LR's daughter away. Ms. New called LR a "dead Mexican" and described an African American neighbor as a "n-----".

45.     Four days later, on August 7, 2018, Ms. New threatened to kill LR's family. Ms. New called LR a "fat bitch" and a "piece of shit." Ms. New told LR that she "doesn't deserve to be a mother to her child," or words to that effect. In the same incident, all of which was recorded on LR's cell phone, Ms. New told LR that she wouldn't be alive if Mr. New's grandfather were still alive. In reference to LR, Ms. New stated, "[t]hat fucking Mexican is going to be dead." Ms. New threatened to "wrap a hose around" LR's neck.

46.     Two days later, Ms. New shouted at LR, "fucking Mexican trash. Go back to Mexico." Again, LR video recorded the harassment on her cell phone.

47.     On August 26, 2018, Ms. New came onto LR's property and verbally harassed LR and her husband who were both in the yard. Ms. New pulled up the "No Trespassing" signs in LR's yard, broke them, and threw them at LR and her husband. LR and her husband had placed the "No Trespassing" signs in the yard specifically in an attempt to keep Vicki New away from them.

48.     LR repeatedly complained about Vicki New's harassment to the other defendants. Around March 2017, LR first contacted the HOA about her experiences with Vicki New. An HOA representative told her that the HOA could not do anything about the situation and instructed her to contact the police.

49.     On August 9, 2017, LR met Christopher Young, the Vice President of the HOA, at a neighborhood social event. She again told Mr. Young about her

experiences with Vicki New. Mr. Young told her that he would call her to set up an appointment to discuss the situation. No one ever contacted LR.

50.    On August 26, 2018, LR sent an email to Vincent White, the property manager from Kirkpatrick assigned to Twin Creeks, detailing her frustrations with the News' behavior towards her and her family. In an email to LR on August 27, 2018, Mr. White responded, "Yes, I am aware of Vicki New. I am sorry you have to be subjected to her as a neighbor...I am powerless to make Vicki stop harassing her neighbors."

### 3. Resident PB

51.    Vicki New repeatedly called PB, an African American renter at Twin Creeks, a "black bitch" and referred to her and her husband as "n-----s". During one incident in during the Spring of 2016, Mr. New stood close by while Ms. New berated the couple with racial slurs. Mr. New was openly carrying a gun in a holster on his hip at the time, intimidating PB.

52.    PB contacted Kirkpatrick about Ms. New's behavior via email and phone. She never received a response from Kirkpatrick.

### 4. Resident DC

53.    Ms. New taunted, intimidated, and trespassed on the property of DC, an African American homeowner at Twin Creeks. One morning in August or September 2016, DC entered his open garage to find Ms. New standing there. She told him, "you n----- don't belong here," or words to that effect.

54.    DC witnessed Ms. New verbally harassing African American prospective homebuyers who visited a house for sale next door to the New residence.

55.    When DC hired a Latino contractor to inspect his roof, Ms. New saw the contractor and stood in the middle of the street shouting that "all Mexicans should go back to their country," or words to that effect.

56.     Upon seeing DC's daughter, who is African American, pull out of the driveway, Ms. New yelled at DC to "control that n------ bitch."

57.     In or around April 2018, DC was cutting his neighbor's grass when Ms. New came over to the yard and told DC that he had no right to be cutting their grass. She told him that he should "take [his] black ass home" and called him "a n------."

58.     In or around May 2018, DC called the HOA and spoke with Vincent White about Ms. New's behavior. Mr. White told DC that defendants received "constant complaints" about the News, or words to that effect. Mr. White indicated that there was nothing he could do about Ms. New's conduct.

59.     In or around August 2018, DC called Kirkpatrick Management to complain again about Ms. New's discriminatory harassment. The woman who answered the phone told DC that they were "tired of New as well," or words to that effect. She indicated that there was nothing that she could do to help DC.

### 5. Resident "LHD"

60.     LHD, an African American woman, rented a dwelling located in Twin Creeks from April 2011 to April 2016. For approximately the last year of her tenancy, LHD lived across the street from Vicki and James New. Throughout that year-long period, Ms. New subjected LHD and her family to discrimination based on race, including threats, harassment, and derogatory slurs, almost daily. On more than one occasion, Ms. New referred to LHD, her wife, and her teenage daughters as "whores" and "black bitches." Ms. New called LHD's sons "drug lords." She threatened to kill LHD and her family.

61.     Ms. New repeatedly contacted animal control to make false accusations about LHD's two small dogs. Ms. New said that she would let her big dog eat LHD's small dogs.

62.    LHD contacted the police many times to report Ms. New's behavior out of fear for the safety of herself, her family, and her property.

63.    Sometime in 2016, LHD called the HOA to complain about Ms. New's discriminatory harassment. She spoke with a man who identified himself as the president of the HOA. He stated that the HOA could not take her complaints because she was a renter.

64.    In April 2016, LHD moved out of her house in Twin Creeks because of the constant exposure to derogatory slurs, concerns about the safety of her family and pets, and the HOA's refusal to take any action to stop Ms. New's discriminatory conduct.

D.    Defendants' response to New's racially discriminatory conduct

65.    Between 2016 and 2018, many HOA residents, including the ones listed above, contacted the HOA, or Kirkpatrick, or both, to complain about the News' campaign of discriminatory conduct. In response to those repeated complaints, defendants stated that they could not do anything to stop Vicki New's conduct and advised complainants to rely on the police to help them. Defendants had the power and authority to take action against the News, but refused to exercise that power to take timely and sufficient action to curb Ms. New's conduct and protect the rights and safety of other residents.

66.    The joint inaction by defendants is consistent with their organization. Kirkpatrick was hired by the board to manage the Twin Creeks community in 2009 and takes direction from the HOA's board. Vincent White is the property manager at Kirkpatrick who works for the HOA.

67.    By summer 2016, the HOA was well aware that Ms. New routinely harassed, threatened, and intimidated other Twin Creeks residents. In June 2016, the HOA's attorney issued a cease-and-desist letter to the News demanding that Ms. New "immediately stop telling the community's members, residents and

13

contractors that you are a member of the Board of Directors or otherwise acting on behalf of the Association," and that Ms. New "cease any behavior that could be deemed as harassment, bullying or mistreatment of the community's residents."

68.    By September 2016, the HOA knew that the News' harassment was specifically targeted at the community's minority residents. In a follow-up letter on September 25, 2016, the HOA details how, "[o]n an almost daily, basis Ms. New can be found roaming the community, trespassing, verbally berating homeowners and residents, and standing in front of her property yelling at neighbors…. [S]he has been overheard making discriminatory comments directed toward residents." The letter relays one report by a homeowner that New "spoke to a resident using racial epithets," and describes Ms. New as "a tyrant pursuing an unrelenting agenda of harassment, discrimination and bullying."

69.    Because Ms. New's initial letter concerned covenant enforcement, the HOA's September 25th response letter includes insight into the HOA's process for enforcing their rules, covenants, and restrictions:

> "The community's manager regularly inspects the community and sends out multiple letters per week to owner… Additionally, I [the HOA's attorney] have sent out numerous letters to owners in Twin Creeks and have even filed lawsuits against some owners to pursue court orders for compliance. In fact, I have two or three lawsuits pending as we speak."

The HOA's attorney asserts that Ms. New's behavior "absolutely must stop," and warns that "my client and the Owners of Twin Creeks are ready to take this matter into a courtroom if this continues, as Ms. New's behavior is a nuisance to the community. In the event such action is necessary, Ms. New will be responsible for the Association's legal fees and costs."

70.    The HOA was empowered to act to stop the News' harassment of other residents by the Declaration of Covenants, Conditions, and Restrictions for Twin Creeks. The covenants require of residents that:

Nothing shall be done or kept in any Lot or in any Home or on or in any Common Area or any part thereof, which would be in violation of any statute, rule, ordinance, regulation, permit or other validly imposed requirement of any governmental body.

Additionally, the covenants state:

No noxious, destructive or offensive activity shall be allowed in any Homes, on any Lots or in the Common Area or any part thereof, nor shall anything be done thereon which may be or may become a nuisance to any other Owner or to any other person at any time lawfully residing on the Property.

To enforce these provisions, the HOA is empowered by the Twins Creeks covenants to initiate "any proceeding at law or in equity."

71.    Although the HOA failed to enforce the above provisions of the covenants to stop News' discriminatory behavior, the HOA did not hesitate to initiate legal proceedings against Mr. and Mrs. New based on non-payment of HOA dues. On March 30, 2017, the HOA filed a complaint in Marion County Superior Court against Mr. and Mrs. New in order to collect on the News' unpaid HOA dues.

72.    Ms. New's harassment of minority residents continued. After the issuing the cease-and-desist letter, no enforcement effort was taken by the HOA or Kirkpatrick. Instead, Vincent White, the property manager from Kirkpatrick, told Twin Creeks residents at a neighborhood meeting in 2017 that he was "tired of receiving phone calls regarding incidents with New," or words to that effect, and that he was going to start "charging" for each phone call that he received regarding Ms. New.

73.    Instead of taking concrete action to end the harassment, the HOA sought to protect its own interests. In early 2018, the HOA sent a letter to each Twin Creeks homeowner acknowledging that "a homeowner in our community has been verbally confronting other Twin Creeks residents and owner, as well as the community's grounds contractors, on a regular basis." The letter stated that, "this owner is not a Board member, and has not been authorized by the Board of Directors to speak or act on behalf of our homeowners association." Instead of taking action to stop the News' discrimination and harassment of other residents, the HOA merely "apologize[d] for any inconvenience to our owners."

74.    Over the course of July and August 2018, Kirkpatrick fielded complaints about Ms. New from approximately six homeowners.

75.    In or about August of 2018, representatives of the HOA attended two meetings with residents in which residents reported that the News used racial slurs and race-based threats of violence toward them. A representative of Kirkpatrick attended the first of these two meetings. The HOA and Kirkpatrick stated that they did not know what they could do to stop the harassment. At the second meeting, a resident asked the HOA to look at provisions in the covenants to see if they could take action against Vicki New. The HOA stated that they would consult their attorney, who was not in attendance.

### E.    The Fair Housing Center of Central Indiana

76.    On August 20, 2018, a resident of Twin Creeks reported to the Fair Housing Center of Central Indiana ("the Fair Housing Center") that Vicki New was harassing, intimidating, and threatening residents in the neighborhood based on race, national origin, and other protected characteristics.

77.    After interviewing the complainant, the Fair Housing Center began an investigation. The complainant provided the Fair Housing Center with contact information for several Twin Creeks residents who had experienced Ms. New's

hateful harassment. The Fair Housing Center surveyed each of these residents and others, completing interviews with over a dozen Twin Creeks residents affected by defendants' discriminatory behavior.

78.     During the course of its investigation, Ms. Banks complained to the Fair Housing Center that she and her family members had experienced harassment by Ms. New at Twin Creeks.

79.     The Fair Housing Center diverted substantial resources to counseling residents of Twin Creeks affected by defendants' discriminatory conduct, investigating the scope of that conduct, and counteracting the effects of that conduct. As a result of that conduct, the Fair Housing Center also undertook community outreach and public efforts to raise awareness of discriminatory practices related to harassment. The Fair Housing Center drafted and distributed educational materials and letters to inform residents of Twin Creeks of the protections offered by fair housing laws, including protections against racial harassment by a neighbor.

F.     Administrative Complaints

80.     On May 31, 2019, Donata Banks and the Fair Housing Center each filed an administrative housing discrimination complaint with the U.S. Department of Housing & Urban Development ("HUD") pursuant to 42 U.S.C. § 3610, describing conduct detailed in this complaint. The complaint was referred to the Indiana Civil Rights Commission for investigation.

81.     On March 3, 2020, the Indiana Civil Rights Commission (ICRC) released a Notice of Finding and Issue of Charge, determining that for each complaint,"[t]here is reasonable cause and probably cause to believe that an unlawful discriminatory practice occurred in this instance."

82.     On March 26, 2020, Defendants HOA and Kirkpatrick filed a notice with ICRC electing to have the claims litigated in Indiana State court rather than

by an ICRC Administrative Law Judge. Based on that election, ICRC dismissed the pending administrative claims under the Fair Housing Act and Indiana Fair Housing Act. ICRC retains jurisdiction for the reasonable cause determination under the Indiana Civil Rights Act. However, plaintiffs are informed and believe, and thereon allege, that the ICRC action will be dismissed in its entirety following the filing of this complaint.

## V.    INJURY

83.    For more than two years, Vicki New subjected plaintiff Donata Banks to severe and pervasive harassment, threats, and intimidation because of her race. Vicki New created a hostile environment that unreasonably interfered with plaintiff's right to use and enjoy her dwelling.

84.    Defendants Twin Creeks HOA and Kirkpatrick Management Co. failed to take prompt action to correct or end the discriminatory conduct of Vicki New, contributing to plaintiffs' injuries. Defendants were aware that residents of Twin Creeks were being subjected to extensive and unwelcome harassment based on race or national origin and that this harassment was sufficiently severe and pervasive to create a hostile environment.

85.    As a result of the defendants' unlawful acts, Ms. Banks suffered a violation of her civil rights, loss of the use and enjoyment of her property, and emotional distress, including anxiety, fear, humiliation, and degradation. Accordingly, plaintiff Donata Banks is entitled to compensatory damages.

86.    Defendants' unlawful and discriminatory conduct also injured the Fair Housing Center. By requiring the Fair Housing Center to expend substantial time and resources identifying and counteracting defendants' unlawful conduct, defendants have harmed the Fair Housing Center by forcing it to divert scarce resources away from its usual education, training, counseling and capacity-building programs and activities to programs and activities to identify and counteract defendants'

18

discriminatory housing practices.  Because the Fair Housing Center has limited resources, the time and resources it spent to identify and counteract defendants' practices meant that it had fewer resources to devote to its usual education, training, counseling and capacity-building activities.  Defendants' discriminatory housing practices have frustrated the Fair Housing Center's mission. The Fair Housing Center must continue to take action to counteract the effects of defendants' discrimination, including educating the residents of Indiana about housing discrimination. Accordingly, the Fair Housing Center seeks compensatory damages under the Fair Housing Act.

87.     Defendants, acting individually and in concert with others, directly and through their agents, have engaged in a pattern or practice of discrimination and harassment based on race and national origin.

88.     There now exists an actual controversy between the parties regarding duties under federal and state laws. Accordingly, plaintiffs are entitled to declaratory relief.

89.     Unless enjoined, defendants will continue to engage in the discriminatory conduct described in this complaint at Twin Creeks and elsewhere. Accordingly, plaintiffs are entitled to injunctive relief.

## VI.   CLAIMS

### FIRST CLAIM

### Fair Housing Act

### (42 U.S.C. §§ 3601 et seq.)

90.     Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

91.     Defendants have injured Plaintiffs by committing discriminatory housing practices based on disparate treatment in violation of the Fair Housing

19

Act, 42 U.S.C. §§ 3604(a), 3604(b), 3604(c), and 3617 including but not limited to the following conduct:

a.      Engaging in any conduct relating to the provision of housing which otherwise makes unavailable or denies dwellings to persons because of race or national origin, or both, in violation of 42 U.S.C. § 3604(a), 24 C.F.R. §§ 100.50(b)(3) and 100.70;

b.      Discriminating in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection with rentals, because of race or national origin, in violation of 42 U.S.C. § 3604(b), 24 C.F.R. §§ 100.50(b)(2) and 100.65(a);

c.      Making, printing or publishing, or causing to be made, printed or published, any notice, statement or advertisement with respect to the rental of a dwelling that indicates any preference, limitation or discrimination because of  race or national origin, or an intention to make any such preference, limitation or discrimination, in violation of 42 U.S.C. § 3604(c) and 24 C.F.R. §§ 100.50(b)(4) and 100.75(a);

d.      Subjecting a person to harassment because of race or national origin that causes the person to vacate a dwelling or abandon efforts to secure the dwelling, in violation of 42 U.S.C. 3604(a) § and 24 C.F.R. § 100.60(b)(7);

e.      Using words, phrases or photographs which convey that dwellings are available or not available to a particular group of persons because of race or national origin, in violation of 42 U.S.C. § 3604(c) and 24 C.F.R. § 100.75(c)(1);

f.      Threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of race or national origin, in violation of 42 U.S.C. § 3617 and 24 C.F.R. §100.400; and,

g.      Creating a hostile environment based on race or national orgin that is sufficiently severe or pervasive as to interfere with the availability, sale, rental, or

use or enjoyment of a dwelling, or the terms conditions, or privileges of the sale or rental, or the provision or enjoyment of services or facilities in connection therewith, in violation of 42 U.S.C. §§ 3604(b), 3617, and 24 C.F.R. §100.600

     h.     Failing to fulfill their duty to take prompt action to correct and end a discriminatory housing practice by a third party, in violation of 42 U.S.C. §§ 3604(b), 3617, and 24 C.F.R. §100.7.

92.     Accordingly, plaintiffs are aggrieved persons entitled to relief under the Fair Housing Act.

## SECOND CLAIM
## Civil Rights Act of 1866
## (42 U.S.C § 1981)
### (Plaintiff Donata Banks only vs. Defendants)

93.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

94.     Defendant injured Plaintiff Donata Banks by impairing her right in the making performance, modification, and termination of contracts, including the enjoyment of all benefits, privileges, terms, and conditions, and benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, in violation of 42 U.S.C § 1981.

## THIRD CLAIM
## Civil Rights Act of 1866
## (42 U.S.C § 1982)
### (Plaintiff Donata Banks only vs. Defendants)

95.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

96.    Defendant injured Plaintiff Donata Banks by impairing her right -- as enjoyed by white citizens -- to inherit, purchase, lease, sell, hold, and convey real and personal property, in violation of 42 U.S.C § 1982.

## FOURTH CLAIM
### Indiana Fair Housing Act
### (Indiana Code § 22-9.5)

97.    Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

98.    Defendants injured plaintiffs by committing discriminatory housing practices in violation of the Indiana Fair Housing Act, Ind. Code § 22-9.5.

## FIFTH CLAIM
### Intentional Infliction of Emotional Distress
### (Indiana Code § 35-45-10-1)
### (Plaintiff Donata Banks only vs. Defendant Vicki New only)

99.    Defendant Vicki New engaged in acts directed at Plaintiff Donata Banks which seriously alarmed, annoyed and harassed Plaintiff for which there was no legitimate purpose.

100.    Defendant New's course of conduct would have caused any reasonable person to suffer substantial emotional distress.

101.    Plaintiff Banks suffered and continues to suffer substantial distress because of Defendant New's actions as set forth above.

102.    Defendant New did the acts herein maliciously and oppressively, and with the wrongful intention of hurting Plaintiff Banks. Plaintiff Banks is thus entitled to recover punitive damages in an amount determined by a jury.

## SIXTH CLAIM

### Negligence – Failure to Train or Supervise

### (Indiana Code § 34-51)

### (Plaintiff Donata Banks only vs. Defendants Twin Creeks
### and Kirkpatrick only)

103.   Plaintiffs reallege and incorporate by reference all previous paragraphs in this complaint.

104.   Defendants Twin Creeks and Kirkpatrick injured Plaintiff Donata Banks by want of ordinary care or skill in their ownership or management of their property and agents.

105.   This negligence includes their failure to train, monitor and supervise their employees and/or agents and their failure to ensure their compliance with the federal Fair Housing Act, the Indiana Fair Housing Act, and applicable regulations.

106.   Accordingly, plaintiff Banks is entitled to an award of damages against defendants Twin Creeks and Kirkpatrick under Ind. Code § 34-51.

## VII.   RELIEF

Wherefore, Plaintiffs pray for the following relief:

i.   Permanently enjoin all unlawful practices alleged in this complaint and impose injunctive relief prohibiting defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, from violating the unlawful practices alleged herein;

ii.   Enter a permanent injunction directing defendants and their directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

iii.   The Court declare that defendants have violated the provisions of applicable federal and state laws;

iv.      The Court award compensatory and punitive damages to Plaintiffs according to proof;

v.      The Court grant reasonable attorneys' fees and costs of the suit to plaintiffs; and,

vi.      The Court grant all such other relief as the Court deems just.

## VIII.  JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby request a jury trial.

Dated: April 16, 2020

Respectfully Submitted,

/s/ *Jeffrey A. Macey*
Jeffrey A. Macey (28378-49)
Macey Swanson LLP
445 N. Pennsylvania Street
Suite 401
Indianapolis, IN 46204
jmacey@maceylaw.com
Tel: (317) 637-2345
Fax: (317) 637-2369

/s/ *Liza Cristol-Deman*
Liza Cristol-Deman (CA 190516)
Brancart & Brancart
P.O. Box 686
Pescadero, CA 94060
lcristoldeman@brancart.com
Tel: (650) 879-0141
Fax: (650) 879-1103

Attorneys for Plaintiffs