**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC; and DONATA BANKS, | ) **Case No.:  1:20-cv-1176 TWP DLP**<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
|  | ) |
| VICKI NEW; KIRKPATRICK MANAGEMENT COMPANY, INC.; and TWIN CREEKS HOMEOWNERS ASSOCIATION, INC., | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

On June 26, 2020, Defendants Kirkpatrick Management Company, Inc. and Twin Creek Homeowners Association, Inc., (collectively, "the Twin Creek Defendants") filed a motion for judgment on the pleadings as to all counts in the complaint, pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Dkt. 13 and 14; hereafter "Motion".) The Twin Creek Defendants' Motion should be denied in its entirety, because Plaintiffs' Complaint contains plausible claims against these defendants for each of the six causes of action.

**I.      STATEMENT OF FACTS**

This is a housing discrimination case brought by Donata Banks, a former resident of the Twin Creeks subdivision in northwest Indianapolis, and the Fair Housing Center of Central Indiana ("FHCCI"), a non-profit fair housing agency that serves central Indiana. Defendant Vicki New, also a former resident of the Twin Creeks subdivision, has not yet filed an appearance in

1

this matter and has evaded formal service. (See Dkt. 16.)[1] The Twin Creeks Defendants filed an

Answer to Plaintiffs' Complaint on June 18, 2020. (Dkt. 12.)

### A. Governance of the Twin Creeks subdivision

The Twin Creeks subdivision is governed by the Twin Creeks Homeowners Association

("HOA"). (See Complaint for Monetary, Declaratory and Injunctive Relief; Demand for Jury

Trial, Dkt. 1, ["Complaint"] ¶ 7.) The HOA and its members are governed by a Declaration of

Covenants, Conditions, and Restrictions ("CC&Rs"). The CC&Rs contain rules of conduct and

other requirements that all residents must abide by. The HOA is empowered to enforce the rules

and requirements contained in the CC&Rs, including by filing legal action against those who

violate them. (Complaint ¶ 70)

The HOA hired a professional management company, Kirkpatrick Management

Company, Inc. ("Kirkpatrick") in or around 2009 to carry out various functions related to the

operation of the HOA and the subdivision. (Complaint ¶¶ 7-8) Kirkpatrick served as the

management company at Twin Creeks during the events that gave rise to this case. (*Id.* ¶ 8.)

Plaintiffs' Complaint alleges that the Twin Creeks Defendants knew for over two years

that resident Vicki New was engaging in repeated and egregious harassment of other residents of

Twin Creeks based on their race and national origin, yet failed to exercise the powers granted to

them under the CC&Rs and required under the Fair Housing Act to curb Ms. New's

discriminatory behavior. (Complaint ¶¶ 26, 27, 65-75).

### B. Vicki New moves to Twin Creeks and begins a campaign of harassment that quickly becomes well-known to the Twin Creeks Defendants.

---

[1] The Court has granted an extension of time to serve Ms. New with the summons and complaint up to and including September 15, 2020. (Dkt. 28.)

Vicki New moved into the Twin Creeks subdivision in approximately March 2016. (Complaint ¶ 11.) Soon after she moved in, Ms. New began a campaign of race-based taunts, threats, and other harassment based on the race and national origin of other residents. (*Id*. ¶¶ 13, 28-64.)  Within three months, by June 2016, the Twin Creeks Defendants knew that Ms. New was bullying and harassing her neighbors. The HOA wrote a letter to Ms. New in June 2016, asking her to stop falsely telling residents that she was "a member of the Board of Directors or otherwise acting on behalf of the Association," and "cease any behavior that could be deemed as harassment, bullying or mistreatment of the community's residents." (Complaint ¶ 67.) The letter had no perceptible effect on Ms. New's campaign of harassment.

Despite the fact that the first letter did not curb Ms. New's discriminatory behavior, the HOA then wrote a second letter to Ms. New, dated September 25, 2016. (Complaint ¶ 68.) In that letter, the HOA specifically referenced allegations that Ms. New was engaging in racial harassment of other residents. The letter stated that, "[o]n an almost daily, basis Ms. New can be found roaming the community, trespassing, verbally berating homeowners and residents, and standing in front of her property yelling at neighbors…. [S]he has been **overheard making discriminatory comments** directed toward residents." (*Id.* emphasis added) The letter relays one report by a homeowner that Ms. New "spoke to a resident using **racial epithets**," and describes Ms. New as "a tyrant pursuing an unrelenting agenda of harassment, **discrimination** and bullying." (*Id.* ¶ 68; emphasis added.) The letter referred to lawsuits filed against other HOA members and stated that the HOA "was ready to take this matter into a courtroom if this continues." (*Id.* ¶ 69).

As with the first letter, the second letter had no perceptible effect on Ms. New's campaign of harassment against residents of Twin Creeks. Ms. New continued to harass,

threaten, and assault Twin Creeks residents based on their race and national origin for two more years before she sold her house and moved out of Twin Creeks in December 2018. (Complaint ¶ 26.) The HOA never made good on its threat to file legal action against Ms. New. Instead, the Twin Creeks Defendants threatened to "charge" for every complaint they received and advised residents to call the police. (Complaint ¶¶ 65, 72.)

### C. Donata Banks moves into Twin Creeks and endures racial harassment by Vicki New.

Donata Banks moved into the house across the street from Vicki New in July 2016. (Complaint ¶ 12.) Ms. Banks and her family are African American. (*Id.* ¶ 5.) Within the first month of Ms. Banks' residency in Twin Creeks, Ms. New called Banks a "black n----- bitch" and commented that the neighborhood was "better before all of you n----- moved in," or words to that effect. (*Id.* ¶ 13.) Ms. New used similar epithets toward Ms. Banks, her family members, and other residents many times over the next two years. (*Id.* ¶ 14-18.) In addition, Ms. New frequently followed Ms. Banks' daughter and other children of color to the bus stop. (*Id.* ¶ 16.) Ms. Banks also witnessed Ms. New harass Latino neighbors and Latino contractors based on their national origin. (*Id.* ¶¶ 18, 20.) On one such occasion, Ms. Banks heard Ms. New call a Latino neighbor a "fat bitch," and a "piece of shit…who does not deserve to be a mother," or words to that effect. In the same incident, Ms. New said "you wouldn't be alive if my grandfather were still alive," or words to that effect. Ms. New said, "[t]hat fucking Mexican is going to be dead," or words to that effect, and threatened to "wrap a hose around [the Latino neighbor's] neck," or words to that effect. (*Id.* ¶ 20.)

Ms. Banks and her family suffered through this harassment for over two years, during which time many residents voiced complaints to the Twin Creek Defendants about Vicki New's

abusive behavior. (*Id.* ¶ 65.) In or around August 2018, Ms. Banks learned that other residents were gathering to discuss what to do about Ms. New's harassment with the HOA and Kirkpatrick. (Complaint ¶ 21.) Ms. Banks attended that meeting and reported about Ms. New's frequent harassment of Ms. Banks and her family members based on race. Many other residents reported about Ms. New's harassment that they had endured based on race and national origin. (*Id.* ¶ 21) The representatives of HOA and Kirpatrick who attended that meeting stated that they did not know what they could do to stop the harassment. (*Id.* ¶ 21.)

The HOA wrote another letter to Vicki New on September 4, 2018, threatening legal action for any future incidents of harassment. (*Id.* ¶ 25.) This letter had no appreciable effect on Ms. New's discriminatory housing practices, which continued for the next three months until Ms. New sold her house and moved out of the Twin Creeks subdivision. (*Id.* ¶ 26.)

**D. Other residents are harassed by Vicki New based on their protected class status.**

Plaintiffs' Complaint summarizes some of the harassment and abuse that Defendant Vicki New inflicted on her neighbors based on their race or national origin between 2016 and 2018. Nearly all of that harassment and abuse took place ***after*** the Twin Creeks Defendants became aware that Vicki New was, in the HOA's words, harassing, bullying, and mistreating other residents. For example:

- Resident LQ, a Latina woman, was repeatedly terrorized by Vicki New between August 2016 and 2018 based on her national origin. Ms. New targeted LQ's licensed in-home day care by blocking the door, yelling at LQ that her clients were "pieces of shift and do not belong here," making false reports to the police, the Better Business Bureau, the child care licensing agency, and CPS. (Complaint ¶¶ 31-34.) Ms. New repeatedly yelled at LQ that she should "go back to [her]

country," and "you don't belong here." (*Id.* ¶ 35.) Ms. New used racial slurs toward a multi-racial couple whose child attended LQ's day care. (*Id.* ¶ 36.) LQ complained to Kirkpatrick about Ms. New's harassment on three separate occasions. (*Id.* ¶¶ 30, 32, 39.)

- Resident LR, a Latina woman, was intimidated and threatened by Vicki New repeatedly between March 2017 and 2018, when Vicki New moved out. New yelled that Mexicans were "trash" who should not be here and should move back to their country. (*Id.* ¶¶ 41, 46.) Ms. New threatened to call CPS for no legitimate reason and menacingly referred to LR as a "dead Mexican." (*Id.* ¶ 44.) In an incident caught on video, Ms. New called LR a "fat bitch" and a "piece of shit" who does not deserve to be a mother. She added that LR would not be alive if Ms. New's grandfather were still alive. She then stated, under her breath, "that fucking Mexican is going to be dead." She threatened to "wrap a hose around" LR's neck." (*Id.* ¶ 45.) On another occasion, Ms. New walked into LR's yard, pulled up a "no trespassing" sign that was intended to keep out Ms. New, and broke it. Ms. New then threw the broken sign at LR and her husband. (*Id.* ¶ 47.) LR complained to both of the Twin Creek Defendants on numerous occasions. (*Id.* ¶¶ 48-50.)

- Vicki New repeatedly harassed PB, an African American resident, using the epithets "black bitch," and "N___." (*Id.* ¶ 51.) PB emailed Kirkpatrick about the incidents, which took place in 2016. (*Id.* ¶ 52.)

- Vicki New repeatedly harassed and used racial slurs toward another African

American resident, DC. Ms. New told DC, "you N___ don't belong here, (*Id.* ¶ 53) and, referring to his daughter, that he should "control that N___ bitch." (*Id.* ¶ 56.) DC complained to both of the Twin Creek Defendants about Ms. New's racial harassment. (*Id.* ¶¶ 58-59.)

- Vicki New also terrorized resident LHD, an African American woman who lived in the same house that Plaintiff Donata Banks eventually rented – directly across the street from Vicki New. (*Id.* ¶ 60.) Ms. New referred to LHD, her wife, and their daughters as "whores" and "black bitches." Ms. New referred to the couple's sons as "drug lords." She threatened to kill the entire family, including their dogs. (*Id.* ¶¶ 60-61.) LHD complained to the HOA in 2016, before she moved out as a direct result of Ms. New's harassment and the Twin Creek Defendants' willful failure to take any action to stop it. (*Id.* ¶¶ 63-64.)

**E. Residents complain repeatedly to the Twin Creeks Defendants.**

As set forth in the complaint, each of the residents identified above, including Plaintiff Donata Banks, informed one or both of the Twin Creek Defendants that Vicki New was harassing them based on race or national origin. LQ complained to Kirkpatrick in August 2016, September 2016, and again in late 2017 or early 2018. (Complaint ¶¶ 30, 32, 39.) Kirkpatrick representatives told LQ that they were aware of the problem, and that LQ should call the police. (*Id.* ¶¶ 30, 32.) When LQ lodged her third report with Kirkpatrick, the Kirkpatrick representative told LQ that there was nothing they could do and the property manager was "very busy." (*Id.* ¶ 39.)

LR also complained about Vicki New's harassment on three separate occasions. She first complained to the HOA in March 2017. The HOA representative told her that they could not do

anything to stop the harassment. (Complaint ¶ 48.) In August 2017, LR again spoke with an HOA board member about Vicki New's harassment. The HOA board member stated that he would contact LR to set up a meeting, but he failed to do so. (*Id.* ¶ 49.) In August 2018, LR sent an email to Kirkpatrick detailing the ongoing harassment and intimidation based on national origin. Vincent White, the property manager, responded "Yes, I am aware of Vicki New. I am sorry you have to be subjected to her as a neighbor…I am powerless to make Vicki stop harassing her neighbors." (*Id.* ¶ 50.)

PB complained to Kirkpatrick by phone and email. She never received a response. (Complaint ¶ 52.) DC called Kirkpatrick on two occasions. (*Id.* ¶¶ 58-59.) Each time, Kirkpatrick stated there was nothing they could do. (*Id.*)

LHD, who rented her house from the owner, complained to the president of the HOA in 2016 about Vicki New's racial abuse. The president stated that he could not help her because she was a renter – a statement that was legally incorrect. (*Id.* ¶ 63.)

Plaintiff Donata Banks worried that she would not be helped by the HOA because she was a renter. Nevertheless, she heard about and attended a meeting with other residents in August 2018 to discuss Ms. New's campaign of harassment with the Twin Creek Defendants. (Complaint ¶ 21.) The Twin Creek Defendants stated to those gathered that they did not know what they could do to stop Ms. New's harassment. (*Id.*)

In fact, there was concrete action that the Twin Creek Defendants were authorized to take to enforce the CC&Rs. The Twin Creek Defendants have the authority under the CC&Rs to initiate a lawsuit against Vicki New for violating any statute, engaging in offensive activities in lots and common areas, and creating a nuisance. (Complaint ¶ 70.) They failed to do so. Over the course of two years, and many complaints from residents concerning outrageous acts of

8

intimidation and racial harassment, the Twin Creek Defendants sent three letters to Vicki New telling her to stop harassing her neighbors. (*Id.* ¶¶ 65-72.) The letters had no apparent effect, as Ms. New's harassment continued. (*Id.* ¶ 72.) In July and August 2018 alone, at least six residents complained to the Twin Creek Defendants about Ms. New's ongoing, discriminatory harassment. (*Id.* ¶ 74.)

## II.    LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings after the pleadings are closed. The same standards apply to a motion brought under Rule 12(c) as apply under a Rule 12(b)(6) motion to dismiss for a failure to state a claim. "To survive a motion to dismiss, the allegations in the complaint 'must plausibly suggest ... a right to relief, raising that possibility above a speculative level," *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)), and give the defendant fair notice of what claim the plaintiff is making and what the basis for that claim is, *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))." *McCray v. Wilkie*, No. 19-3145, 2020 WL 4045674, at *3 (7th Cir. July 16, 2020).

A complaint is facially plausible when a plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility, however, is not the same as probability. At the Rule 12 stage, the court is not tasked with weighing competing theories and determining the likelihood of each theory. Instead, allegations in the complaint are sufficient if they are not "purely speculative." *Twombly*, 550 U.S. at 555. Moreover, the allegations in the complaint are to be accepted as true and construed in the light most favorable to plaintiffs. *Williams v. Dart*, __

F.3d __, 2020 WL 4217764 at *1 (7th Cir. July 23, 2020); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019).

### III.   ARGUMENT

#### A.   Plaintiff Banks has standing against the Twin Creeks Defendants regardless of whether she had a contractual relationship with them.

The Twin Creek Defendants argue that plaintiff Donata Banks does not have standing to "bring a complaint" because she was not a homeowner and therefore, not a party to the Twin Creeks CC&Rs. (Motion at 4.) Defendants' argument is incorrect. Plaintiff Donata Banks has not brought a claim for breach of contract, and none of the claims she has alleged in the Complaint require privity of contract. Ms. Banks is not suing defendants to enforce the CC&Rs. Rather, plaintiffs' complaint references the CC&Rs only to illustrate the rules that Ms. New violated and the powers accorded to the HOA to control or punish such violations. These rules, and defendants' power to control violations of these rules, are relevant to Ms. Banks' first claim that the Twin Creek Defendants are directly liable for violating the Fair Housing Act. In the absence of a breach of contract claim, none of the arguments or Indiana state case authorities cited by defendants (Motion at 4-6) have any application in this case.

The regulations promulgated by HUD interpreting the Fair Housing Act ("FHA") provide that a defendant may be held directly liable for the discriminatory housing practices of a third party by "failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it." 24 C.F.R. § 100.7 (a)(iii). Plaintiffs' complaint specifically alleges that the Twin Creek Defendants may be held liable under this standard. (Complaint ¶ 91h.) Plaintiffs' complaint also alleges that the CC&Rs are relevant because they demonstrate that the Twin

Creek Defendants had the power to correct Ms. New's discriminatory housing practices and failed to do so. (*Id*. ¶ 70.)

Ms. Banks has standing under the FHA regardless of whether she had any contractual relationship with the Twin Creek Defendants. The Fair Housing Act authorizes an "aggrieved person" to bring a claim. 42 U.S.C. § 3613(a)(1)(A). The FHA defines "aggrieved person" as anyone who claims to have been injured by a discriminatory housing practice. 42 U.S.C. § 3602(i)(1). Thus, any person or entity that claims to have been injured by a violation of any of the substantive sections of the FHA – sections 3604, 3605, 3606, or 3617 – is authorized to bring a claim.

The Supreme Court has "repeatedly written that the FHA's definition of person 'aggrieved' reflects a congressional intent to confer standing broadly." *Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296, 1303 (2017).  In order to establish standing under the FHA, the plaintiff must show that she (1) incurred an injury as a result of defendant's unlawful conduct; (2) those injuries are within the "zone of interests" protected by the FHA; (3) the injuries were proximately caused by defendant's violation. *Id.* at 1302-03. Whether the Twin Creeks' Defendants had any contractual obligation to Ms. Banks is irrelevant under each of these inquiries.

Plaintiff Donata Banks can establish all three elements of standing under the FHA. First, she alleges that she incurred injuries as a result of the Twin Creek Defendants' failure to use its power to promptly take action against Ms. New and her campaign of racial harassment, in violation of the FHA. (Complaint ¶¶ 70-75, 91 h.) Namely, the complaint alleges that Vicki New subjected Ms. Banks to a hostile environment, which the Twin Creek Defendants "failed to take prompt action to correct or end, contributing to plaintiff's injuries." (Complaint ¶¶ 83-84.) Ms.

11

Banks alleges that "as a result of the defendants' unlawful acts, [she] suffered a violation of her civil rights, loss of the use and enjoyment of her property, and emotional distress, including anxiety, fear, humiliation, and degradation." (Complaint ¶ 85.) These allegations are sufficient to show that Donata Banks suffered injury as a result of the Twin Creek's Defendants failure to use their authority to curb Vicki New's severe and pervasive harassment based on Donata Banks' race.

Second, there can be no dispute that these are the type of injuries that are clearly within the FHA's "zone of interests." Ms. Banks is an African American woman who experienced substantial emotional distress in a planned housing community as a result of her neighbor's racial epithets and harassment, and the Twin Creek Defendants failure to stop that harassment. Previous cases make clear that this is the type of conduct and injuries connected with a dwelling that the FHA is intended to address. *See, e.g., Wetzel v. Glen St. Andrew Living Community, LLC*, 901 F.3d 856, 866-67 (7th Cir. 2018), *cert. dismissed sub nom. Glen St. Andrew Living Com. v. Wetzel*, 139 S. Ct. 1249 (2019); *see also Harris v. Itzhaki*, 183 F.3d 1043, 1048, 1050 (9th Cir. 1999)(holding that African American plaintiff had standing based under FHA after overhearing a tenant who collected rent tell a repairman that the owners did "not want to rent to Blacks"); *see also County of Cook v. Bank of America Corp.*, 181 F.Supp.3d 513, 519 (N.D. Ill. 2015)(holding that a "zone of interests" analysis is not required if the plaintiff has satisfied Article III standing requirements).

Third, as alleged in the complaint, the Twin Creek Defendants' willful inaction caused Ms. Banks' injuries. Plaintiffs' contend that the Twin Creek Defendants knew that Vicki New was harassing neighbors *specifically based on race* by September 2016. (Complaint ¶ 68.) By that date, Ms. Banks had only lived in Twin Creeks for two months. (*Id.* ¶ 5.) Ms. New's

harassment continued for another two years. (*Id.* ¶ 68.) If the Twin Creeks Defendants had taken action under authorized by the CC&Rs to file a lawsuit against Ms. New in September 2016, her discriminatory conduct, and the hostile environment she created, would have ended far earlier. Their deliberate inaction led to, or at a minimum, exacerbated Ms. Banks' injuries. Defendants' claim that Ms. Banks' lacks standing because she had no contractual relationship with them, therefore, is legally erroneous.

### B. Plaintiffs' Complaint states a plausible claim that the Twin Creeks Defendants may be held directly liable for the discriminatory housing practices of Vicki New.

The Twin Creek Defendants' Motion attempts to analyze principles of vicarious liability, but apparently assumes that the Twin Creek Defendants cannot be held ***directly liable*** for violating the Fair Housing Act. That assumption is incorrect. In fact, plaintiffs seek to hold the Twin Creek Defendants directly liable for their *own* decision to allow Vicki New to continue to terrorize her African American and Latino neighbors in spite of their authority to take concrete action against her as a member of the HOA. No principal-agent relationship is necessary to hold the Twin Creek Defendants directly liable for their deliberate indifference to the hostile environment created by Ms. New.

Paragraph 91 (h) of the Complaint quotes the specific section from the FHA's implementing regulations that provides for direct liability for failing to curb the discriminatory housing practices of a third party, 24 C.F.R. § 100.7(a)(iii).[2] That code provides that a defendant may be held directly liable for the discriminatory housing practices of a third party by "failing to

---

[2] HUD's interpretations of the FHA are entitled to "great weight" and command "considerable deference." *See Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210 (1972); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 107 (1979). *See also Bloch v. Frischholz*, 587 F.3d 771, 780–82 (7th Cir. 2009) (en banc) (relying on HUD regulations in interpreting the breadth of various prohibitions in the Fair Housing Act).

take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it." 24 C.F.R. § 100.7 (a)(iii). Here, the Twin Creek Defendants are not entitled to judgment because the allegations state a plausible claim that they may be held directly liable.

There are ample allegations in the Complaint to demonstrate that the Twin Creek Defendants knew about Ms. New's discriminatory conduct starting as early as June 2016. (Complaint ¶ 67.) The Complaint also demonstrates that the Twin Creek Defendants were empowered by the CC&Rs to issue fines against Ms. New for her discriminatory conduct, and even to file a lawsuit against her to enjoin her discriminatory conduct. (*Id.* ¶ 70.) Instead of filing a lawsuit to stop the harassment, the Twin Creek Defendants sent her letters – letters that had no perceptible effect on Ms. New's discriminatory conduct. (*Id.* ¶ 72.) By contrast, even while the hostile environment continued, the Twin Creeks Defendants did not hesitate to file a lawsuit against Ms. New for failure to pay her HOA dues -- a violation that had nothing to do with racial discrimination. (*Id.* ¶ 71.) The allegations set forth in the complaint, therefore, are sufficient to show that the Twin Creek Defendants may be directly liable for failing to use their authority to curb Ms. New's harassment under the FHA.

The Seventh Circuit has ruled in a similar FHA case that a housing provider with no agency relationship may be held liable for failing to stop a tenant from engaging in discriminatory harassment that injures other tenants. In *Wetzel v. Glen St. Andrew Living Community, LLC*, 901 F.3d 856 (7th Cir. 2018), *cert. dismissed sub nom. Glen St. Andrew Living Com. v. Wetzel*, 139 S. Ct. 1249 (2019), the Seventh Circuit reversed the dismissal of plaintiff's FHA claim against the owners and managers of a residential community for seniors. Plaintiff claimed that fellow residents repeatedly berated her based on her sexual orientation and

14

physically assaulted her while yelling homophobic taunts. *Id.* at 860. She alleged that her complaints to managers were disbelieved or ignored. *Id.* The same managers, she alleged, also retaliated against her based on her complaints. *Id.* She then brought two FHA claims against the owners and managers: (1) defendants violated 42 U.S.C. section 3604(b) by failing to ensure a non-discriminatory living environment; and (2) defendants violated 42 U.S.C. section 3617 by retaliating against her for making complaints. *Id.* at 861. The District Court dismissed both claims, holding that a housing provider could not be held liable under the FHA without proof of discriminatory animus and that, in any event, the FHA did not cover post-acquisition discrimination. *Id.*

The Seventh Circuit reversed on both claims. The relevant question, according to the Court, is whether someone who has "available remedial tools" to affect conduct fails to use those tools to stop discriminatory harassment. *Id.* at 865.

The Twin Creek Defendants' attempt to distinguish *Wetzel* from this case is not persuasive. (Motion at 12-13.)  Although the defendant in *Wetzel* was a landlord, the court's analysis did not turn on the existence of the landlord-tenant relationship or any principal-agent relationship. Instead, the court's holding rested on whether the defendants had "actual knowledge of the severe harassment [the plaintiff] was enduring and whether they were deliberately indifferent to it." *Wetzel*, 901 F.3d at 864. Indeed, the *Wetzel* decision acknowledges that the "tenant is largely independent of the landlord," *id.* at 863, but holds that the landlord is nevertheless liable for tenant-on-tenant harassment because the landlord has "'an arsenal of incentives and sanctions…that can be applied to affect conduct' but fails to use them." *Id.* at 865, quoting *Dunn v. Washington,* 429 F.3d 689, 691 (7th Cir. 2005). For the same reason, other courts have held homeowners associations responsible when they fail to properly address

incidents of discriminatory harassment by neighbors. *See, e.g., Wilstein v. San Tropai Master Ass'n,* No. 98 C 6211, 1999 WL 262145, at *11 (N.D. Ill. Apr. 22, 1999)*; Reeves v. Carrollsburg Condominium Unit Owners Ass'n*, 1997 WL 1877201 at *25 (D.D.C. 1997) (citing *Gittleman v. Woodhaven Condo. Ass'n*, 972 F. Supp. 894 (D.N.J. 1997) ("condominium associations, like landlords, are responsible for maintaining the common areas and enforcing the regulations of the association for the benefit of the residents").

Here, too, the CC&Rs show that the Twin Creek Defendants had an "arsenal of incentives and sanctions" other than letter-writing that could have deterred Ms. New from continuing to abuse her neighbors. The CCRs empowered the HOA to "initiate any proceeding at law or in equity" against any residents who engage in "noxious, destructive or offensive activity" or pose a "nuisance" to others. (Complaint ¶ 70.) The Twin Creek Defendants failed to initiate any such proceeding, and Ms. New's conduct continued unabated, to the detriment of many Twin Creek residents, until Ms. New finally sold her house and moved out.

The Twin Creek Defendants also point out that the majority of the discriminatory harassment in *Wetzel* took place in common areas subject to the landlord's control. This is no basis on which to distinguish *Wetzel*, since the same is true here. Indeed, *all* of the harassment alleged in the complaint took place in outdoor areas within the Twin Creeks subdivision, on sidewalks, lawns, and other outdoor areas; none of the events took place inside private houses. According to the CC&Rs, these outdoor areas are within the control of the Twin Creek Defendants. ("No noxious, destructive or offensive activity shall be allowed in any Homes, *on any Lots or in the Common Area* or any part thereof." Complaint ¶ 70, emphasis added.)

Defendants also assert that *Wetzel* should not be followed here because Ms. Banks does not allege that the Twin Creek Defendants retaliated against her for making fair housing

16

complaints. That assertion is a red herring. Retaliation is not a necessary element in the analysis

of whether defendants failed to promptly address Ms. New's discriminatory conduct, in violation

of section 3604(b).  In fact, retaliation is not a necessary element under section 3617 either, a

section which also interference with fair housing rights. 42 U.S.C. § 3617.

*Wetzel* is not the only case within this circuit that has held that a defendant may be held

directly liable for the discriminatory acts of a third-party without a principal-agent relationship if

the defendant knew about the acts, had some level of control over the third-party, and failed to

promptly exercise that control. For example, in *National Fair Housing Alliance v. Deutsche

Bank National Trust*, No. 18 CV 839, 2019 WL 5963633, at *9 (N.D. Ill. Nov. 13, 2019), the

district court refused to dismiss plaintiffs' claim against Deutsche Bank based on third-party

servicers' discriminatory maintenance of foreclosed properties owned by Deutsche Bank. The

court found that plaintiffs had alleged sufficient facts to show that Deutsche Bank had the right

to hold servicers in default under the terms of their agreement if they failed to protect and

conserve the properties. *Id.* at *10. Agreements that give a defendant the ability and authority to

incentivize good behavior or impose punishments for bad behavior by a third-party, the court

held, "confer the requisite (not absolute) amount of control to incur liability for deliberate

indifference." *Id.* at *10.

Other circuits and district courts also have held that a defendant may be directly liable for

failing to intervene to stop discriminatory harassment by neighbors. In *Francis v Kings Park

Manor, Inc.*, 944 F.3d 370, 378-79 (2d Cir. 2019)[3], a case in which the United States Department

of Justice joined as amicus curiae on behalf of the plaintiffs, the Second Circuit held that a

---

[3] Rehearing en banc granted, 949 F.3d 67 (Feb 3, 2020).

plaintiff seeking to hold a landlord responsible for a hostile housing environment created by another tenant stated a viable claim under the FHA. The Eighth Circuit has also held that a landlord could be liable for the hostile environment created by a tenant. *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 365 (8th Cir. 2003). Likewise, numerous district courts have held that homeowners associations that failed to take swift action to address neighbor's harassment may be held liable. *Reeves v. Carrollsburg Condominium Unit Owners Ass'n*, 1997 WL 1877201 at * 7 (D.D.C. 1997); *Gittleman v. Woodhaven Condo. Ass'n, Inc.,* 972 F.Supp. 894 (D.N.J.1997). *See also Fahnbulleh v. GFZ Realty, LLC,* 795 F. Supp. 2d 360, 364 (D. Md. 2011) (landlord liability); *Bradley v. Carydale Enterprises*, 707 F.Supp. 217, 224 (E.D. Va 1989)(holding a landlord liable for the "failure to investigate and resolve [the plaintiff's] complaint of racial harassment").

The Twin Creek Defendants point to a single district court case, *Morris v. W. Hayden Estates First Addition Homowners Ass'n, Inc.,* 382 F.Supp.3d 1093 (D. Idaho 2019), in their attempt to sideline the Seventh Circuit decision in *Wetzel*. (Motion at 13-14.) The *Morris* case, however, is neither persuasive nor instructive here. First, it represents a single decision of one district court judge, sitting outside of this circuit. Second, the analysis of homeowners association liability for failing to stop tenant-on-tenant harassment in *Morris* is at odds with the precedent in this circuit set by *Wetzel*.  In fact, the district court in *Morris* acknowledges that it does not agree with the Seventh Circuit decision in *Wetzel. Id.* at 1102 n.6. Third, the district court in Morris refuses to grant *Chevron* deference, or any weight whatsoever, to the HUD regulation governing direct liability, 24 C.F.R. section 100.7. That refusal runs counter to Seventh Circuit precedent, in which the court has relied on HUD regulations interpreting the FHA. *Bloch v. Frischholz*, 587 F.3d 771, 780–82 (7th Cir. 2009). Finally, *Morris* was decided on

a full, post-trial record, not at the pleading stage.  For all of these reasons, *Morris* is not a model that this court should follow.

### C.  The Twin Creek Defendants are not exempt from the Fair Housing Act.

#### 1.  The Single-family home exemption does not apply.

Defendants allege that plaintiffs' complaint fails because single-family homes sold or rented by an owner are exempt from certain provisions of the FHA, and the discriminatory actions alleged by plaintiffs were "directed toward the occupants of single-family homes." (Motion at 8.) Defendants misunderstand the single-family home exemption of the FHA. Moreover, defendants bear the burden of proving that any such exemption applies – a burden that they cannot meet.

First, by its terms, the exemption contained in section 3603(b)(1) applies only when the defendant is an owner is selling or renting a "single-family house," without the use of a real estate professional. 42 U.S.C. § 3603(b)(1); *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 851 (N.D. Ill. 2003) (§ 3603(b)(1) exemption "is limited to actions by a homeowner in selling or renting his home, not post-sale actions by a non-owner [like defendant-neighbor here] designed to deprive a homeowner of the use of the home"). Neither of the Twin Creek Defendants, therefore, fall into this category.

Defendants such as homeowners associations and management companies that take actions affecting single family homes, on the other hand, are not exempt under section 3603(b)(1). City zoning actions, for example, frequently affect single family homes and are still covered under the FHA. *See, e.g., Smith & Lee Assoc., Inc. v. City of Taylor,* 13 F.3d 920, 924 n.5 (6th Cir. 1993). Similarly, homeowners associations are not exempt when they take actions that govern single family homes. *Massaro v. Mainlands Section 1 & 2 Civic Ass'n*, 3 F.3d 1472

19

(11th Cir.1993), *cert. denied,* 513 U.S. 808 (1994) ("The declaration [of restrictions] and the Association's powers distinguish this case from that of a single family homeowner and place the Association within the reach of the Act."); *Fair Housing Center of Central Indiana, Inc. v. Brookfield Farms Homeowners' Ass'n*, No. 4:14 CV 00058-PPS-JEM, 2016 WL 481983 (N.D. Ind. February 8, 2016) (assuming without discussing that homeowners association may be liable if it failed to grant a reasonable accommodation to the CC&Rs to allow the sale of a single family house to an organization that intended to operate a group home for people with disabilities). Accordingly, the Twin Creek Defendants are not entitled to claim this exemption.

Third, even if the Twin Creek Defendants were entitled to claim the single-family home exemption, the exemption explicitly does not apply to violations of 42 U.S.C. section 3604(c), the provision of the FHA that bans facially discriminatory statements, or section 3617, the anti-intimidation provision. Plaintiffs have brought claims under both of these sections.

Fourth, plaintiffs' complaint cannot be dismissed at this stage based on an affirmative defense unless the complete factual basis for the defense is clear on the face of the complaint. The exemption claimed here under § 3603(b)(1) is an affirmative defense. *See United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005). Affirmative defenses such as exemptions under the FHA are not grounds to dismiss the complaint unless the "allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir.2005); accord *County of Cook*, 181 F.Supp. 3d at 520. Here, the grounds for the affirmative defense are not clear on the face of the complaint, so the Twin Creek Defendants' argument fails.

**2. The FHA covers anyone who commits a "discriminatory housing practice," not just "housing providers."**

Defendants also misapprehend the coverage of the FHA when they argue that the FHA does not cover the Twin Creek Defendants because they are not "housing providers." (Motion at 9.) The FHA does not limit liability to housing providers. Instead, the FHA lists a broad array of discriminatory housing **practices** without specifying who may be held liable for committing those practices. *See Meyer v. Holley,* 537 U.S. 280, 285 (2003)(noting that the FHA focuses on prohibited acts rather than actors). As the Eleventh Circuit has noted in a case holding that a municipality may be held liable for the discriminatory provision of utility services, "the text of § 3604(b) does not limit its applicability [to providers of housing] and our case law has never held that only housing providers are subject to liability thereunder." *Georgia State Conference of the NAACP v. City of LaGrange, Georgia*, 940 F.3d 627, 635 (11th Cir. 2019). Likewise, other courts interpreting the FHA have applied the law to a variety of defendants who provide no housing but nevertheless affect access to, and the use and enjoyment of, housing, including municipalities, credit screening services, insurance companies, banks, and real estate listing agents. *E.g., Connecticut Fair Housing Ctr. v. Corelogic Rental Prop. Sols., LLC,* 369 F. Supp. 3d 362, 373 (D. Conn. 2019) (credit screening company), *National Ass'n for the Advancement of Colored People v. American Family Mutual Ins. Co.*, 978 F.2d 287, 297-300 (7th Cir. 1992) (homeowner insurance provider). Homeowner associations and property management companies like the Twin Creek Defendants also may be held liable for discriminatory housing practices, because they affect the use and enjoyment of housing through their rules and governance. *See, e.g, Simovits v. Chanticleer Condominium Ass'n,* 933 F. Supp. 1394 (N.D. Ill. 1996) (holding HOA liable for discrimination based on familial status in violation of FHA based on no-children rule in its declaration of condo ownership); *Sabal Palm Condominiums of Pine Island Ridge Ass'n, Inc. v. Fischer*, 6 F. Supp. 3d 1272, 1293 (S.D. Fla. 2014)(citations omitted).

21

### D. Plaintiffs were injured by discriminatory housing practices that violate the FHA.

Defendants contend that Ms. Banks has no valid FHA claim because she was neither refused the right to live in Twin Creeks nor constructively evicted. (Motion at 10-11.) This contention is without merit. The FHA prohibits a broad range of discriminatory housing practices besides refusal to rent or sell and constructive eviction. *See, e.g.,* 42 U.S.C. § 3604 *et seq; see also Block v. Frishholz,* 587 F.3d 771, 782 (7th Cir. 2009*)*(a defendant may interfere with fair housing rights in violation of section 3617 even in the absence of constructive eviction); *Black v. Friedrichsen,* No. 1:19-CV-307, 2020 WL 1184466 at *10 (N.D. Ind. March 11, 2020) ("The Defendants' argument, however, ignores the fact that Black can prosecute an FHA claim without having to establish that she was constructively evicted.").

Plaintiffs do not allege that defendants refused Ms. Banks the right to rent property in Twin Creeks, or that Ms. Banks was constructively evicted, both of which would violate section 3604(a) of the FHA. Rather, Plaintiff Donata Banks contends that the Twin Creeks Defendants are directly liable for failing to curb other discriminatory housing practices committed by Ms. New: the hostile racial environment created by Vicki New in violation of section 42 U.S.C. section 3604(b), discriminatory statements in violation of 42 U.S.C. section 3604(c), and threats, intimidation, and interference with Ms. Banks' enjoyment of her fair housing rights in violation of 42 U.S.C. section 3617. Neither plaintiff has alleged a claim under §§ 3604(d) or (e).

Plaintiff FHCCI, on the other hand, *does* allege that it has been injured by Vicki New's violation of 42 U.S.C. section 3604(a). FHCCI alleges that Vicki New's conduct, and defendants' failure to stop it, has resulted in the constructive eviction of residents based on their race and national origin, which has injured plaintiff FHCCI. Plaintiff FHCCI alleges that several

22

of the residents who lodged complaints with their agency, including LHD, moved out of Twin Creeks because the barrage of racist harassment and threats leveled at them made their housing situation unsafe and unbearable. (Complaint ¶ 64.) Such conduct "makes housing unavailable" within the meaning of 42 U.S.C. section 3604(a). *See Small v. The Anchorage Homeowners Ass'n LLC*, No. 1:18-cv-01605 TAB-SEB, 2019 WL 1317636 at *3 (S.D. Ind. 3/21/19).[4]

FHCCI has standing to challenge defendants' violations of the FHA because of its own injuries.  FHCCI diverted substantial resources to assisting residents of Twin Creeks who complained to the agency about Ms. New's discriminatory conduct. (Complaint ¶ 79.) The discrimination discovered at Twin Creeks led FHCCI to conduct community outreach to raise awareness of the fair housing laws within Twin Creeks and in the general public. (*Id.*) FHCCI's efforts to identify and counteract the discriminatory housing practices "harmed the Fair Housing Center by forcing it to divert scarce resources away from its usual education, training, counseling and capacity-building programs and activities." (*Id*. ¶ 86.) FHCCI's mission to ensure equal housing opportunities has been frustrated, and it must continue its educational efforts to counteract the adverse effects of defendants' discrimination on its mission. (*Id.* ¶¶ 4, 86.) These constitute "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources," sufficient to confer standing as an "aggrieved person" under the FHA. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990) ("the only injury which

---

[4] The plaintiffs in *Small* apparently failed to argue that the homeowners association should be held directly liable based on their deliberate inaction. Therefore, the court did not consider this argument, or the HUD regulation that sets forth this basis for liability, in ruling that plaintiffs could not establish liability under 42 U.S.C. section 3604(b). *Small*, 2019 WL 1317636 at *4-5. Rather, the court seems to have looked solely at whether plaintiffs could hold the homeowners association vicariously liable for a neighbor's alleged discrimination.  *Small*, 2019 WL 1317636 at *1 ("Likewise, the Court grant's SGA's motion because Plaintiffs fail to plead facts that could sustain vicarious liability.") By contrast, plaintiffs here do not claim that defendants should be held vicariously liable.

need be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination").

In addition to Defendants' contentions concerning § 3604(a), addressed above, Defendants also contend that plaintiffs have failed to plead facts sufficient under the FHA, 42 U.S.C. §§ 3604 (b), (c), (d), (e), (f), and 3617. (Motion at 15-16.) Plaintiffs do not claim, and the Complaint does not allege, that defendants violated subsections (d), (e), or (f). Plaintiffs' FHA claims are limited to sections 3604 (a) (FHCCI only), (b), and (c), and 3617. (Complaint ¶ 91.) The facts set forth in the complaint are sufficient to support these claims.

1. **The Complaint alleges facts sufficient to state a claim that Defendants violated 42 U.S.C. section 3604 (b).**

Plaintiffs Donata Banks and FHCCI allege that Twin Creeks resident, Vicki New, engaged in a campaign of harassment against other residents, including race-based threats, derogatory slurs, and other menacing conduct – conduct that could and should have been addressed by the Twin Creek Defendants. Harassment based on protected class status is a form of discrimination long recognized and prohibited under the FHA, including under section 3604(b). *See, e.g, DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996) (sex harassment in housing violates 42 U.S.C. §§ 3604(b) and 3617); *Francis,* 944 F.3d at 377 (race discrimination in housing); *Neudecker*, 351 F.3d 361 (disability-based discrimination in housing); 24 C.F.R. § 100.600 (a). Plaintiffs have alleged sufficient facts to support their claim for discriminatory harassment in violation of section 3604(b) here.

Section 3604(b) provides that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services in connection therewith, because of race, color, sex, familial status, or national origin." 42 U.S.C. §

24

3604 (b). Harassment may constitute a violation of section 3604(b) if it "'unreasonably interferes with the use and enjoyment of the premises.'" *DiCenso*, 96 F.3d at 1008, quoting *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993). HUD promulgated regulations in 2015 that confirm, and in some instances expand, the right to be free from harassment in housing based on protected class. 24 C.F.R. § 100.600. Whether harassment violates the FHA must be determined from the totality of the circumstances. *DiCenso*, 96 F.3d at 1008; 24 C.F.R. § 100.600 (a)(2)(i).

Plaintiffs' complaint alleges that Ms. New repeatedly used racial slurs and other vulgar, derogatory language directed at Ms. Banks and many other people of color who lived in Twin Creeks. She yelled epithets at them when they drove down the street, parked legally outside of their houses, and went about their daily lives. She followed their children. She threatened to kill more than one neighbor based on their race and national origin. These egregious incidents took place repeatedly over a two-year-period. As stated in the Complaint, these events "created a hostile environment that unreasonably interfered with [Donata Banks'] right to use and enjoy her dwelling." (Complaint § 83.) These allegations are sufficient to state a claim for hostile environment harassment.

The Complaint also alleges sufficient facts to state a claim that the Twin Creeks Defendants are directly liable for their failure to adequately deter, stop, or punish Ms. New for her discriminatory harassment. As explained above, their liability turns on their knowledge and the tools they had available to control or punish it.  24 C.F.R. § 100.7(a)(iii); *Wetzel,* 901 F.3d at 865.  The allegations in the Complaint show that many residents complained to the Twin Creek Defendants about Ms. New's abusive behavior, but the Twin Creek Defendants failed to use the options available to them to stop it. Resident LQ, for example, complained about Ms. New's discrimination in August 2016, September 2016, and again in late 2017 or early 2018.

25

(Complaint ¶¶ 30, 32, 29.) Resident LHD also complained in 2016. (*Id.* ¶ 63.) Resident LR first complained in March 2017, and again in August 2018. (*Id.* ¶¶ 48-49.) Donata Banks and many other residents complained about New's racist harassment at a meeting attended by both Twin Creeks Defendants, and still no concrete action was taken. (*Id.* ¶ 21-22) Despite all of the complaints made by residents of color, the Twin Creek Defendants failed to use the authority within the CC&Rs to initiate any legal action against Vicki New.  (*Id.* ¶ 70.)

Likewise, the facts alleged in the Complaint also state a claim that the Twin Creeks Defendants engaged in discriminatory enforcement of community rules and regulations. A defendant who refuses to enforce rules to protect residents from racial harassment while enforcing other rules may also violate section 3604(b). *See Mehta v. Beaconridge Improvement Ass'n*, 432 Fed. Appx. 614, 617 (7th Cir. 2011) (upholding § 3604(b) claim by resident against his homeowners' association for discriminatory services); *H.O.P.E., Inc. v. Lake Greenfield Homeowners Association*, 330 F. Supp. 3d 1105, 1115 (N.D. Ill. 2018) (upholding § 3604(b) claim against homeowners association for "adopting discriminatory rules, or enforcing facially neutral rules in a discriminatory fashion"). Here, the Complaint alleges that the Twin Creek Defendants enforced the CC&Rs in a discriminatory fashion. As alleged in the Complaint, they filed a lawsuit against Vicki New based on her violation of the CC&R provision requiring her to pay homeowners association dues. (Complaint ¶ 71.) By contrast, they took no concrete action to deter, stop, or punish Ms. New's repeated violations of other provisions of the CC&Rs by engaging in offensive activities, creating a nuisance, and violating state and federal laws. These facts are sufficient to state a claim for discriminatory enforcement, and the Complaint adequately alleges that each of the plaintiffs was injured by this FHA violation.

26

2. **The Complaint alleges facts sufficient to state a claim that Defendants violated 42 U.S.C. section (c).**

Plaintiffs' Complaint also alleges facts that support a plausible claim that defendant Vicki New made discriminatory statements with respect to the sale or rental of dwellings, and the Twin Creek Defendants should be held liable for failing to stop or punish her from continuing to make such statements. 42 U.S.C. section 3604(c) makes it unlawful to "make print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, … or national origin, or an intention to make any such preference, limitation, or discrimination." Written or oral statements that indicate to an ordinary reader or listener any such preference or discrimination in connection with a dwelling are covered. *See* 24 C.F.R. § 100.75(b)*; White v. U.S. Dep't of Hous. & Dev.,* 475 F.3d 898, 905 (7th Cir. 2007), *citing Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553, 556 (7th Cir. 1995)

Vicki New made statements that violated section 3604(c), because they indicated that African Americans and Latinos did not belong in dwellings in Twin Creeks. She told Ms. Banks that "the neighborhood was better for all of you n_____ moved in."  (Complaint ¶ 13.) She told Latina resident LQ that she should "go back to your country," and "you don't belong here." (Id. ¶ 35.) She also told African American resident DC that he did not belong in Twin Creeks. Each of these statements indicated to an ordinary listener that people of color are not welcome in Twin Creeks. Moreover, plaintiffs' state sufficient facts in the Complaint to state a claim that the Twin Creeks Defendants may be held directly liable for Ms. New's discriminatory housing practices pursuant to the standard set forth in 24 C.F.R. 100.7 (a)(iii). Each of the plaintiffs was injured by these FHA violations.

3. **The Complaint alleges facts sufficient to state a claim that Defendants violated 42 U.S.C. section 3617.**

Similarly, Plaintiffs have pled sufficient facts to state a claim against the Twin Creek Defendants under the FHA's anti-intimidation provision, 42 U.S.C. § 3617. Section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

The Twin Creek Defendants do not appear to dispute that Plaintiffs' Complaint has adequately stated a claim for intimidation and threats under section 3617 against Vicki New. (Motion at 7.) Rather, they assert that Plaintiffs cannot pursue a claim under 3617 against them because they have not directly engaged in any activities that could be construed as intimidation, coercion, threats, or interference. (*Id.*) Defendants' assertion is incorrect, because the direct liability standard set forth in 24 C.F.R. 100.7(a)(iii) applies to all discriminatory housing practices. Plaintiffs have adequately alleged that defendants may be held directly liable for Ms. New's threatening and intimidating conduct in violation of section 3617, because they knew about it and failed to take action to stop it or punish it. Consequently, the Twin Creek Defendants are not entitled to judgment on this claim.

E.  **The Complaint states plausible claims under the Civil Rights Act, § 1982.**

The Twin Creek Defendants assert that Donata Banks' claims under the Civil Rights Act of 1866, 42 U.S.C. § 1982, fails for two reasons. First, they assert that her claims fail because she had no contractual relationship with them and could not have "interfered in any way" with her rental contract. (Motion at 16.) Second, they assert that her claims fail because she has not

alleged that the Twin Creeks' Defendants actions were racially motivated. Defendants' first assertion is legally incorrect. Defendants' second assertion should also be rejected because it overstates the intent requirement and disregards evidence of discriminatory enforcement.

The Supreme Court has held that Section 1982 should be broadly construed to effectuate its remedial purposes. *See, e.g., City of Memphis v. Greene*, 451 U.S. 100, 122 (1981). It protects not only the right to "purchase" and "lease" property on a nondiscriminatory basis, but also the right to "hold" property without discrimination. 42 U.S.C. § 1982; *Greene,* 451 U.S. at 122 (Section 1982 concerns "the right of black persons to hold and acquire property on an equal basis with white persons and the right of blacks not to have property interests impaired because of their race.")  The "threshold inquiry" under Section 1982, "must focus on the relationship between the [defendant's conduct] and the property interests of the [plaintiff]." *Id.* This threshold inquiry does not include the existence of a contractual relationship, as the right to hold property without discrimination may be infringed by government actors (as in *Greene*) and private citizens who have no special relationship with the plaintiff. *See, e.g.*, *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969)(upholding § 1982 cause of action against a neighborhood recreational park, which refused membership based on race); *Stirgus v. Benoit*, 720 F. Supp. 119, 121–22 (N.D. Ill. 1989) (racially-motivated violence against African American resident infringes on right to hold property protected by § 1982).

The parties do not contest that Section 1982 requires proof of intent. But the scope of that intent requirement is not as broad as the Twin Creek Defendants suggest. Intent is not the same as discriminatory animus. Plaintiffs must allege that defendants treated people in a protected class differently, or applied rules in a discriminatory fashion, but there is no requirement that

29

Plaintiffs show that these Defendants harbored ill-will or discriminatory animus toward Ms. New's targets. *See Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1530–31 (7th Cir. 1990).

Plaintiff Donata Banks has adequately alleged that the Twin Creek Defendants have intentionally interfered with her right to hold property. The Twin Creek Defendants are responsible for the governance of the Twin Creeks subdivision. (Complaint ¶¶ 7-8.) The CC&Rs that regulate Twin Creeks contain rules that prohibit activities that violate any statute, or that constitute offensive activity or any activity that constitutes a "nuisance to any other Owner or to any other person at any time lawfully residing on the Property." (*Id.* ¶ 70.) The Twin Creek Defendants failed to use their powers to enforce these rules to stop Vicki New from violating fair housing laws and engaging in offensive behavior toward other Twin Creek residents of color, despite filing "two or three other lawsuits" (*Id.* ¶ 69-71.) They did not hesitate to enforce the regulations and use their power, by contrast, to hold Vicki New accountable in court for failing to pay her HOA dues. (*Id.* ¶ 71.) As the Second Circuit and Seventh Circuits have held in similar situations, a defendant who tolerates a discriminatory, hostile environment but intervenes in non-race related disputes raises the inference of discriminatory intent. *Wetzel*, 901 F.3d at 864, *Francis*, 944 F.3d at 380. Similarly, Plaintiffs' Complaint adequately states a claim that the Twin Creeks Defendants have interfered with the right of Donata Banks to hold property free of discrimination, in violation of Section 1982.

Plaintiffs also state a valid claim under Section 1981 of the Civil Rights Act, but agree to voluntarily abandon that claim here, in part because it provides no additional relief that plaintiffs are not already entitled to under the FHA and Section 1982.

**F.      The Complaint states a Plausible Claim for Negligence**

30

Banks has alleged that the Twin Creeks Defendants injured her "by want of ordinary care or skill in their ownership or management of their property and agents." (Complaint ¶ 104.) Specifically, Banks alleges that their negligence "includes their failure to train, monitor and supervise their employees and/or agents and their failure to ensure" the agents' compliance with the FHA and applicable regulations. (*Id.* ¶ 105)

Defendants attack these allegations on two separate grounds. First, they allege that Banks has not pleaded any facts which would give rise to the inference that the Twin Creeks Defendants owed a duty to Banks, either in contract or in tort, to train or supervise its agents and employees.  Second, they allege that any injury sustained by Banks was the result of the actions of someone other than the employees or agents of the Twin Creeks Defendants.

Again, as stated above, Banks was only required to make a "facially plausible" complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible when a plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Taking the contentions in reverse order: the claim is not that New was an agent or employee of the Defendants, but that the Defendants' employees and agents, despite being on notice of the multiple threatening, intimidating, and potentially violent actions of New, did not act to protect Banks' rights. As detailed above, their failure to do so is actionable under the Fair Housing Act and Section 1982.

It is a plausible inference for Banks to make that the repeated refusal of Defendants' employees and/or agents to enforce the covenants in effect that would have allowed them to take action against New and protect Banks was a result of the failure of the Twin Creeks Defendants to train them. This is the basis for the negligence claim. And, this is precisely what Banks

31

specifically pled: that the Twin Creeks Defendants failed to train, monitor and supervise their employees to comply with their obligations under the Fair Housing Act and in doing so, damaged her.

In this case, the Fair Housing Act establishes the duty owed to Banks. *See* Restatement of Torts (Second) §286 (recognizing that the standard of care can be established by legislation); *see also Hayden v. Franciscan Alliance, Inc.*, 131 N.E.2d 685, 693 (Ind. Ct. App. 2019) (recognizing that Indiana has adopted the Restatement of Torts). The breach of the duty has been extensively detailed above. And Defendant has not challenged the damages caused by the Defendants' agents' and/or employees' failure to comply with the Act. The elements of the tort are met and the negligence claim should proceed.

## IV.    CONCLUSION

Plaintiffs have alleged facts that plausibly support each of their claims. Therefore, the Twin Creeks Defendants' Motion for Judgment on the Pleadings should be denied in its entirety.

\* \* \*

Dated:   August 14, 2020.

Respectfully submitted,

MACEY SWANSON LLP
  Jeffrey A. Macey (28378-49)
  jmacey@maceylaw.com
445 N. Pennsylvania Street
Suite 401
Indianapolis, Indiana 46204
Tel:   (317) 637-2345
Fax:   (317) 637-2369

BRANCART & BRANCART
*/s/ Liza Cristol-Deman*
  Liza Cristol-Deman (CA190516)
  cbrancart@brancart.com
Post Office Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103

Attorneys for Plaintiffs

32

**Certificate of Service**

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, on August 14, 2020, I caused the following document to be served by email via the Court's ECF system a copy of the document entitled – **BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

– upon the following attorneys:

Jeffery A. Macey
Macey Swanson LLP
445 N. Pennsylvania Street
Suite 401
Indianapolis, Indiana 46204
*jmacey@maceylaw.com*

Crystal S. Wildeman
Wooden McLaughlin LLP
25 NW Riverside Dr., Suite 310
Evansville, IN 47708
*crystal.wildeman@woodenlawyers.com*

Jere A. Rosebrock
Wooden McLaughlin LLP
One Indiana Square, Suite 1800
Indianapolis, IN 43204-4208
Jere.rosebrock@woodenlawyers.com


*/s/ Liza Cristol-Deman*