**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., and DONATA BANKS,**<br><br>    **Plaintiffs,**<br><br>    vs.<br><br>**VICKI NEW; KIRKPATRICK MANAGEMENT COMPANY, INC., and TWIN CREEKS HOMEOWNERS ASSOCIATION, INC.,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Case No.: 1:20-cv-01176 TWP-DLP**

**JUDGE: TANYA WALTON PRATT**

**MAGISTRATE JUDGE: DORIS L. PRYOR**

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Kirkpatrick Management Company, Inc. and Twin Creeks Homeowners Association, Inc. (collectively "the Twin Creeks Defendants"), by counsel, have moved the Court for judgment on the pleadings as to all counts in the Complaint asserted against the Twin Creeks Defendants. Plaintiffs filed a brief in opposition to Defendants' Motion on August 14, 2020 ("Pl. Br."). *See* ecf no. 29. Defendants reply to Plaintiffs' opposition now.

In this housing discrimination case, Plaintiffs assert claims against the Twin Creeks Defendants based solely upon the actions of a private homeowner in the association – Vicki New – against her neighbor Plaintiff Donta Banks. It is undisputed from the pleadings that Ms. New never had any authority to act on behalf of the Twin Creeks Defendants and the Twin Creeks Defendants renounced Ms. New's behavior. It is further undisputed from the pleadings that in response to complaints about Ms. New, the Twin Creeks Defendants' counsel sent a series of escalating cease and desist letters, which ultimately led to Ms. New moving out of the community. Between counsel's final letter dated September 4, 2018, and when Ms. New moved

out of the neighborhood, no allegations of discrimination or harassment occurred.

Through its various novel theories, Plaintiffs assert both direct liability and vicarious liability actions against the Twin Creeks Defendants for not doing "more" to control Ms. New, namely failing "to take prompt action" to correct and end the News' discriminatory harassment and interference with residents of Twin Creeks. (Complaint ¶ 27.) There is no single act alleged which can justify liability against the Twin Creeks Defendants. Instead, and as Plaintiffs acknowledge in their Complaint, the Twin Creeks Defendants obtained legal counsel and charged counsel with addressing New's unacceptable behaviors. The problem – it seems – is that Ms. New was simply very committed to her campaign and undeterred by legal process of any kind.[1] Plaintiffs further assert that the Twin Creeks Defendants "have the authority under the CC&Rs to initiate a lawsuit against Vicki New for violating any statute, engaging in offensive activities in lots and common areas, and creating a nuisance." (Pl. Br. At 8, Complaint ¶ 70.) Yet, Plaintiffs do not allege that filing a lawsuit would have had any further deterrent effect on New's conduct, nor could they. Ms. New moved out shortly after the Twin Creeks Defendants' final letter. Therefore, there was no further action needed on behalf of the Twin Creeks Defendants.

## I.       Plaintiffs' claims fail the plausibility standard.

Courts review motions for judgment on the pleadings under the same standard by which they review motions to dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). While Plaintiffs must only provide a "short and plain statement of the claim showing that she is entitled to relief" pursuant

---

[1] According to Plaintiffs Ms. New was undeterred even when arrested, charged with criminal charges, and exposed by video by a local news station. (Complaint ¶ 23 – 24). Additionally, Ms. New's disregard for the law has spilled into this case where she has intentionally evaded Plaintiffs' service attempts in this matter. *See* ecf doc nos. 16, 17, 18, and 19.

to Federal Rule of Civil Procedure 8(a), the United States Supreme Court has further held that in addition to providing fair notice to the defendant of the claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim which is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully." *Id.* "[T]he height of the pleading requirement is relative to the circumstances[,]" *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), and "[d]etermining the plausibility of a claim is a context-specific task that requires [the Court] to draw on [its] judicial experience and common sense." *Fair Hous. Ctr. of Cent. Indiana v. Grandville Coop. Inc.*, No. 116CV00300LJMDML, 2017 WL 75447, at *3 (S.D. Ind. Jan. 9, 2017)(citing *Brown v. JP Morgan Chase Bank*, 334 Fed. Appx. 758, 759 (7th Cir. 2009)).

Plaintiffs' Complaint details allegations relating to a campaign of offensive and inappropriate behavior perpetrated by Defendant Ms. New. Plaintiffs' facts, even when taken as true, fail to establish any viable claim against the Twin Creeks Defendants.

**II.    The Defendants' acted in response to the complaints.**

Both parties have previously outlined the facts as alleged by the Plaintiffs, which are taken as true at this stage of the proceedings. *Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir. 2000). The Twin Creeks Defendants' actions in response to complaints about Vicki New, as pled by the Plaintiffs are as follows:

3

1.  Ms. New moved into the Twin Creeks subdivision in approximately March of 2016. (Complaint ¶ 11).

2.  Within three months of Ms. New moving into the subdivision, the HOA wrote a letter to Ms. New in June of 2016. (Complaint ¶ 67). The letter, attached as Exhibit "B" to Defendants' Answer provided, in pertinent part:

> *Dear Ms. New:*
> *This firm represents Twin Creeks Homeowners Association, Inc. ("Association"). The Association's Board of Directors has advised me of several concerns relating to your interaction with other Twin Creeks homeowners and residents, as well as contractors hired by the Association. These issues include the following:*
>
> *   *Confronting Twin Creeks owners and renters and informing them that you are a member of the Board of Directors or otherwise acting on behalf of the Twin Creeks Homeowners Association.*
> *   *Confronting the Association's contractors, informing them that they "are fired," telling landscapers not to cut the grass, and generally attempting to obstruct them from doing their job.*
> *   *Sending out notices to Twin Creeks homeowners purporting to be organizing meetings on behalf of the Twin Creeks Homeowners Association.*
> *   *Contacting and generally harassing renters.*
> *   *Walking the community and personally confronting homeowners based on perceived violations of the community's covenants.*
> *   *Contacting the community's property manager on an almost daily basis.*
>
> *As I understand, the issues have gotten bad enough to where one owner is now planning to sell her property due to your treatment of her renter.*
> *In any event, please consider this a Notice of Claim under Indiana Code §32-25.5-5-10. Pursuant to this statute, the following is submitted:*
>
> 1.  ***Nature of the Claim.*** *All matters above are incorporated in this claim. Over the last several months, homeowners have indicated to the Association's Board of Directors and the community's property manager, Kevin Patterson, that you are personally confronting homeowners and renters; instructing the community's contractors not to work; verbally confronting*

4

*owners based on perceived violations of the community's covenants; purporting to organize meetings and other gatherings on behalf of the Association; and generally holding yourself out as a member of the Board of Directors or representative of the Association.*

2. ***Basis of Claim****. You have not been elected or appointed to the Association's Board of Directors. As such, you have no lawful basis for informing community residents or the Association's contractors that you are acting on the Board's behalf. This is misleading to the residents. The Association has received several complaints from homeowners and contractors regarding your actions.*

3. ***What the Association wants you to do****. You must immediately stop telling the community's members, residents and contractors that you are a member of the Board of Directors or otherwise acting on behalf of the Association. Should you wish to pursue owners and renters for perceived violations of the community's covenants, you may do so independently. However, you may not tell people that you are acting on behalf of the Board of Directors. Additionally, the Association demands that you cease any behavior that could be deemed as harassment, bullying or mistreatment of the community's residents. If you believe an owner or resident is in violation of the community's covenants or you have any other issue you deem to be important, you may contact the community's manager with respect to those issues. However, I do not believe daily phone calls to the management company is necessary.*

4. ***Meeting****. You have the right to meet with the Board of Directors of the Association in an attempt to resolve these issues by good faith negotiation. If you would like to meet, please submit a written request to me at the address above no later than July 1, 2016.*

*The Board of Directors does not wish to be contentious or litigious. However, they cannot permit an owner to claim that she is a member of the Board or acting on the Board's behalf when that is simply untrue. As such, the Board will have to take legal action if you do not stop telling people that you are acting on behalf of the Board or the Association. Thank you in advance for your cooperation in resolving this matter.*

3. Plaintiff Ms. Donata Banks moved into the house across the street from Ms. New in July of 2016. (Complaint ¶ 12).

4. On September 25, 2016, the HOA wrote a second letter to Ms. New. (Complaint ¶ 68). In that letter, the HOA attorney told Ms. New that her behavior "absolutely must stop," and warned that, "my client and the Owners of Twin Creeks are ready to take this matter into a courtroom if this continues." (Complaint ¶¶ 68 – 69.)

5. The News failed to pay mandatory HOA dues in 2017. On March 30, 2017, the HOA filed a complaint in state superior court against the News. (Complaint ¶ 71.)

6. In early 2018, the HOA sent a letter to each of the Twin Creeks homeowners stating: "a homeowner in our community has been verbally confronting other Twin Creeks residents and owner, as well as the community's grounds contractors, on a regular basis. … This owner is not a Board member, and has not been authorized by the Board of Directors to speak or act on behalf of our homeowners' association." (Complaint ¶ 73.)

7. Over the course of July and August of 2018, Kirkpatrick fielded complaints about Ms. New from approximately six homeowners. (Complaint ¶ 74.)

8. In or around August of 2018, representatives of the HOA attended two meetings (and a representative of Kirkpatrick attended one of the two meetings) focusing on complaints about New, and the HOA agreed to consult their attorney to determine whether they could take action against New. (Complaint ¶ 75).

9. The HOA wrote another and final letter to Ms. New on September 4, 2018. (Complaint ¶ 25), which encouraged New to remove herself from the community. The letter, attached as Exhibit "C" to Defendants' Answer provided, in pertinent part:

*Dear James and Vicki New:*

*This firm represents Twin Creeks Homeowners Association, Inc. ("Association"). As you may recall, I previously sent you a letter advising of several concerns about Vicki's behavior, including repeated harassment of residents, members of the Association's Board of Directors, Association-hired contractors and the community's manager. All such antics were to cease at that time. Unfortunately, the situation has escalated. ...*

*The severe and pervasive nature of Vicki's actions have substantially interfered with the rights of Twin Creeks residents to use and enjoy their properties, and therefore represent an ongoing community nuisance in violation of the Covenants. Such nuisances must be abated immediately. During a recent news report, you indicated an intent to sell your property. It does seem you have had difficulty living in even relative harmony with other residents. Given your problems getting along with your neighbors and seeming disenchantment with the community, moving would be in everyone's best interest, including yours. However, until you sell your property, please consider the following cease and desist demand to be in effect:*

- *You are to have no further contact or communication, either written or oral, with ANY Twin Creeks resident, either personally or through a third-party intermediary. Unless the other party initiates the communication or it is a life-threatening emergency, written or oral communication with any resident in Twin Creeks is strictly prohibited. This includes electronic communication such as email and text messages.*
- *You are to refrain from trespassing upon the property of other residents at all times.*
- *All nuisances, including oral and written harassment of other neighbors, destruction of property, oral and written threats, verbal abuse, and other forms of harassing, intimidating, threatening and bullying behavior must cease immediately.*
- *Until further notice, you are not to attend any meeting of the Association's members, be it the Association's annual meeting, a special meeting, Board meeting or committee meeting. Permitting you to attend further meetings would be a disservice to the community. Put simply, your neighbors do not feel safe around you.*
- *All overt acts of racism directed toward other residents must cease immediately and permanently.*
- *You may not communicate, either orally or in writing, with any member of the Association's Board. If you have a question or*

7

*concern regarding the Association or your property, you must communicate through the community's property manager. However, please note that verbal harassment of the manager or the management company's employees will constitute a violation of this cease and desist demand.*

- *You may not knowingly visit any location at which you know a resident of Twin Creeks or any of the Association's agents, employees or contractors to be.*
- *Communication with the Association's vendors and contractors is strictly prohibited unless they initiate the communication. Even if such communication is initiated by the contractor, you must still refrain from engaging in any confrontational, harassing, or bullying forms of communication.*
- *Further written or oral communication with this law firm is strictly prohibited.*
- *Any criminal conduct, including destruction of property, harassment, stalking, intimidation, threats and physical force of any kind, is a violation of this cease and desist order.*
- *You are not a member of any Association-run committee, including the crime watch committee. You may not represent yourself to others as being a member of such committee.*

...

*I speak for both the Association's Board of Directors and the community's residents when I say that harassing, bullying, discriminatory and bigoted behavior will not, in any way whatsoever, be tolerated in this community. Our patience with you is at an end.*
*Assuming you do not violate this cease and desist demand and sell your home within the near future, I surmise there will be no further issues. Thank you for your cooperation in resolving this matter.*

10. Within approximately ninety (90) days of the letter from counsel, Ms. New sold her house and moved out of the subdivision in December of 2018. (Complaint ¶ 26). None of the harassing behaviors Plaintiffs allege in the complaint occurred within the approximately ninety (90) days between Attorney Chandler's September 2018 letter (Complaint ¶ 25; Defendants' Exhibit "C") and the December date the News moved from the community.

**III.    All Plaintiffs' claims against the Twin Creeks Defendants should be dismissed.**

There are no cases in this Circuit or district imposing liability on a homeowners'

association or property manager for neighbor-on-neighbor racial harassment. Therefore, there is no recognized caused of action or binding precedent for the allegations in Plaintiffs' Complaint. Plaintiffs' allegations in this case should be distinguished from cases in which Courts have imposed liability on homeowners' associations or property management companies as a result of discriminatory treatment by agents and/or representatives of those entities. This case should further be distinguished from cases in which courts have found a cause of action against a *landlord* or other party with a contractual relationship (and therefore attendant obligations) with the plaintiff. In this case, the Twin Creek Defendants are not landlords; Vicki New is not an agent or representative; and the Twin Creek Defendants have no contractual relationship with Banks or ability to control the behavior of New.

Relying on cases outside of this Circuit, Plaintiffs advocate for liability against the Twin Creeks Defendants because Plaintiffs believe the law required the Twin Creeks Defendants to "do more" to control New. Yet, there is no such requirement. Plaintiffs advocate that the Twin Creeks Defendants bear liability for failing to file a lawsuit against Ms. New. Yet, after Mr. Chandler's September 2018 letter to the News, the News voluntarily moved from the community without suit. There are no allegations of any conduct on behalf of Ms. New or her husband between the last letter from Mr. Chandler and the date the News moved. As such, Plaintiffs' allegations fail to state a claim under any theory.

    a. **No cause of action lies against the Defendants under the FHA.**

Ms. New was not acting as a board member, agent, or employee of the Twin Creeks Defendants when she engaged in her ongoing pattern of harassment, and the Twin Creeks Defendants disavowed her behaviors, chastised her for those behaviors, and ordered her to cease and desist those behaviors. In order for Plaintiffs to state a viable claim for relief against the

9

Twin Creeks Defendants under the FHA, they must allege facts which support disparate treatment in the use or enjoyment of a dwelling, or a breach of duty. Under the plain language of the Fair Housing Act, Plaintiffs have failed to state a claim against the Twin Creeks Defendants upon which relief can be granted for the following reasons:

> **i.** The Fair Housing Act does not apply to a single-family home sold or rented by the owner. 42 U.S.C.A. § 3603(b)(1).
>
> ii. The Twin Creeks Defendants are not housing providers subject to 42 U.S.C. § 3604.
>
> iii. Banks' rights to purchase, rent, or negotiate for housing were not affected by any alleged action or inaction by the Twin Creeks Defendants.
>
> iv. Banks was not constructively evicted from her home.

Additionally, there is no cause of action against the Twin Creeks Defendants for neighbor-on-neighbor harassment, nor should there be. Plaintiffs allege direct liability against the Twin Creeks Defendants pursuant to 24 C.F.R. § 100.7. That statute provides:

(a) Direct liability.

(1) A person is directly liable for:

(i) The person's own conduct that results in a discriminatory housing practice.

(ii) Failing to take prompt action to correct and end a discriminatory housing practice by that person's employee or agent, where the person knew or should have known of the discriminatory conduct.

(iii) Failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party.

(2) For purposes of determining liability under paragraphs (a)(1)(ii) and (iii) of this section, prompt action to correct and end the discriminatory housing practice may not include any action that penalizes or harms the aggrieved person, such as eviction of the aggrieved person.

(b) Vicarious liability. A person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law.

10

The analysis of Plaintiffs' allegations here on this Rule 12 motion should note section iii -- "failing to take prompt action." The statute states: "the power to take prompt action to correct and end a discriminatory housing practice by a third-party depends *upon the extent of the person's control* or any other legal responsibility the person may have with respect to the conduct of such third-party." As already briefed in Defendants' Memorandum in Support of their Motion for Judgment on the Pleadings and as borne out by the factual allegations of Plaintiffs, the Twin Creeks Defendants did not have any control over Vicki New or any other legal responsibility to protect the general public from Ms. New.

The Seventh Circuit has not yet applied 24 C.F.R. § 100.7 and in a similar context, a district court judge expressed doubt as to the propriety of recognizing a cause of action to extend liability to defendants like Twin Creeks. *See Morris v. W. Hayden Estates First Addition Homeowners Ass'n, Inc.*, 382 F. Supp. 3d 1093 (D. Idaho 2019). In fact, the district court judge in *Morris* explained that despite *Wetzel* and *Francis*, a homeowners' association cannot be held liable for non-board member homeowners' actions. Judge Winmill noted four reasons for this conclusion (1) the statute is incredibly broad without clear guidance stating that imposing liability on HOAs is the intent of the legislature; (2) associations, like the one in *Morris* can lack the resources (funded by the other homeowners themselves) to police interactions between homeowners; (3) even if an association has the resources, an association "lacks the arsenal of incentives and sanctions" to prevent discrimination held by the landowners in *Wetzel* and *Francis* making those cases inapt; and (4) without precedent and as a matter of public policy, extending the duty under an extraordinarily broad reading of the FHA requiring homeowners associations to police and correct disputes among neighbors would "most certainly create more conflict than it prevented." Judge Winmill also noted: "If Congress wishes to impose this duty

11

on homeowners' associations, it must say so plainly."

The legislature has not made such an intent plain since the April 4, 2019 decision in *Morris*, nor has the Seventh Circuit chosen to adopt the broad interpretation advocated by Plaintiff and renounced by Judge Winmill. Plaintiffs attempt to undermine the judge's analysis in *Morris* by asserting that the case is outside this jurisdiction and that Judge Winmill "does not agree with the Seventh Circuit decision in *Wetzel*." (Pl.'s Br. at 18.) First, most of Plaintiffs' substantive arguments are based on cases outside of the Seventh Circuit, so if Plaintiffs' argument that other jurisdictions' handling of FHA cases should not be considered, such should undermine their analysis as well. Additionally, Judge Winmill did not state that he did not "agree with" the decision in *Wetzel* in footnote 6. Instead, Winmill noted that *Wetzel* involved the operator of an elderly community over which the operator had full control over the occupants as tenants. A homeowners' association, like that in *Morris* and like that at bar, by contrast, does not have control over private homeowners in a subdivision such that remedies like eviction are available for inappropriate behaviors. The Seventh Circuit made clear this distinction when it noted that the relationship between the plaintiff and defendant in *Wetzel* "was governed by the Agreement and the Tenant Handbook." No such agreement or relationship exists (or has even been alleged) between the Twin Creeks Defendants and Banks. Based on Plaintiffs' allegations in the Complaint, there is no cause of action on these undisputed facts.

There is only one case, a case from the Second Circuit, interpreting 24 C.F.R. § 100.7 – *Francis v. Kings Park Manor, Inc.*, 917 F.3d 67 (2d Cir. 2019) rehearing en banc granted, 949 F.3d 67 (2020) – and that case involves a landlord alleged to have engaged in discrimination as a result of tenant-on-tenant harassment. In fact, the Second Circuit wrote: "we solicited HUD's views relating to a landlord's potential liability for a tenant's racial harassment of another tenant

under its regulations.  In response, HUD, as amicus curiae, points us to its rules designed to clarify the law in this area and urges us to recognize *certain limited claims against landlords arising out of tenant-on-tenant racial harassment.*"  *Id.* at 115 (emphasis added).  Thus, in the *Francis* case, the Second Circuit noted that even against landlords, there would be only "certain limited claims."  *Francis* does not hold, nor suggest, that homeowners' associations and property managers are subject to liability for homeowner-on-homeowner harassment, let alone homeowner on non-homeowner third party renter, as is the case here.

Thus, the *Francis* case, and the four cases from other jurisdictions cited by Plaintiffs in their response brief are all distinguishable from the case at bar and do not support the causes of action Plaintiffs try to plead in this case.  Plaintiffs assert: "numerous district courts have held that homeowners' associations that failed to take swift action to address neighbor's harassment may be held liable" and then cite *Reeves v. Carrolsburg Condominium Unit Owners Ass'n*, 1997 WL 1877201 at 7 (D.D.C. 1997); *Gittleman v. Woodhave Condo Ass'n., Inc.*, 972 F. Supp. 894 (D.N.J. 1997); *Fahnbulleh v. GFZ Realty LLC,* 795 F. Supp. 2d 360 (D. Md. 2011); and *Bradley v. Carydale Enterprises,* 707 F. Supp. 217, 224 (E.D. Va. 1989).  Plaintiffs' assertion is inaccurate.

All of these decisions predate 24 C.F.R. § 100.7, which became effective on October 14, 2016.  And therefore, none of them rely upon that statute.  Furthermore, the *Fahnbulleh* and *Bradley* cases involve *landlords*, as opposed to homeowners' associations or property management companies.  The pleadings in this case establish that neither Twin Creeks nor Kirkpatrick were landlords or in any kind of contractual relationship with Plaintiff Banks.  Therefore, *Fahnbulleh* and *Bradley* are inapplicable.

Also, *Gittleman* does not involve neighbor harassment, as erroneously stated by the

13

Plaintiffs. *Gittleman* involved a handicapped owner of a condominium unit in a condominium association, which refused to accommodate his request for exclusive use of a parking space. In response to Gittleman's request to have exclusive access to a parking space, which would be universally available to all owners, the association held a vote in order to amend the rights to use common areas. The vote failed to carry the necessary votes to amend the rights to use the common areas, and therefore, his request was denied. Gittleman sued and asserted an FHAA claim for the association's failure to make a reasonable accommodation in the rules in order to afford Gittleman, a disabled individual, equal opportunity to use and enjoy his dwelling. These facts, again, do not involve neighbor harassment and are further distinguishable because Gittleman was a unit owner and the homeowners' association was the actor accused of acting in a discriminatory fashion. Thus, *Gittleman* does not advance Plaintiffs' causes of action against the Twin Creeks Defendants, either.

*Reeves* is the closest factual scenario Plaintiffs have identified, but *Reeves* is an unreported case in the District of Columbia from 1997. In *Reeves*, the plaintiff alleged sexual and racial harassment perpetrated by an individual resident within the homeowners' association which began in 1989 and continued through 1995, unabated. Unlike Banks, the plaintiff in Reeves was a homeowner and member of the association, and unlike the case at bar, Reeves entered into a purchase agreement with the condo association for the purchase of her unit in order to escape the perpetrator. The condo association then later refused to consummate the sale, thus forcing plaintiff to continue to withstand the harassment. The *Reeves* undisputed facts further established that the condo association "took little, if any, action to correct the situation." *Id.* at *8.

Conversely, here, from the face of the Complaint and as buttressed by the Answer to the

14

Complaint, the facts establish that the Twin Creeks Defendants responded to the complaints about Ms. New, and did so strongly, in accordance with its bylaws. No discriminatory or harassing conduct is alleged to have occurred after the September 2018 letter. And, within ninety (90) days after the September 2018 letter, the News moved from the neighborhood. The record, as pled by the Plaintiffs, distinguishes itself from that in *Reeves*. Additionally, no Indiana court or any court within this district has relied upon the unreported decision in *Reeves* to support a cause of action against a homeowners' association or property management group, as Plaintiffs seek to do here. In fact, in another jurisdiction, in the case of *Lawrence v. Courtyards at Deerwood Association, Inc.*[2], that district court judge dismissed the FHA and civil rights claims against a homeowners' association in a case involving neighbor-on-neighbor racial harassment, despite examining *Reeves*'s holding. 318 F. Supp. 2d 1133 (S.D. Fl. 2004).

In sum, Plaintiffs' claims do not support a cause of action against the Twin Creeks Defendants for violation of the Fair Housing Act. As a result, Count I should be dismissed.

### b. Civil Rights Claims

#### i. Plaintiffs' Abandoned the § 1981 Claim

In order to state a claim under § 1981 of the Civil Rights Act, the Plaintiffs must demonstrate the Twin Creeks Defendants violated Banks's right related to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. The Twin Creeks Defendants did not have any contractual relationship with Banks, and Banks did not allege any contractual relationship with the Twin Creeks Defendants in her pleadings.

Additionally, an intent to discriminate for an illegal purpose is an essential element of a

---

[2] Defendants recognize that this case also predated 24 C.F.R. § 100.7.

cause of action under § 1981. *See, e.g., Kim v. Ritter*, 493 F. App'x 787, 789 (7th Cir. 2012). Because Banks failed to demonstrate that the Twin Creeks Defendants' actions, or failure to act, were racially motivated, her claims under the Civil Rights Act fail as a matter of law. Plaintiffs apparently concede this point and agree to dismissal of this claim. As stated at their brief on page 30: "Plaintiffs also state a valid claim under Section 1981 of the Civil Rights Act, but agree to voluntarily abandon the claim here, in part because it provides no additional relief that plaintiffs are not already entitled to under the FHA and Section 1982." As a result, Count II of the Complaint should be dismissed.

### ii.  The § 1982 Claim

To state a claim under § 1982 of the Civil Rights Act, Banks must demonstrate that the Twin Creeks Defendants interfered with her exercising the same right as white citizens "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Plaintiffs argue this right also encompasses the right to "hold" property without discrimination. (Pl's Br. at 29.) Additionally, Plaintiffs admit that the "threshold inquiry" under Section 1982 focuses on "the relationship between the [defendant's conduct] and the property interests of the plaintiff." (Pl's Br. at 29). Yet, Plaintiffs' allegations establish that the Twin Creeks Defendants did not have any contractual relationship with Banks. Additionally, there are no alleged facts that the Twin Creeks Defendants interfered in any way with Banks' rental contract or ability to "hold" property. Simply alleging that the Twin Creeks Defendants should have done more or taken some action other than the cease and desist letters (which ultimately resulted in New moving) is insufficient to satisfy the interference required to plead a 1982 violation, and therefore, this claim (Count III) should be dismissed.

16

### c. Negligence

Plaintiffs assert a negligence claim against the Twin Creeks Defendants for alleged failure to train or supervise. To establish such a claim, Plaintiffs must show (1) a duty owed to her by Twin Creeks Defendants, (2) a breach of that duty, and (3) injury to Banks that was proximately caused by the Defendants' breach. *See Hayden v. Franciscan Alliance, Inc.*, 131 N.E.3d 685 (Ind. Ct. App. 2019). Plaintiffs have not pleaded any facts which would give rise to the inference that the Twin Creeks Defendants owed a duty to Banks, either in contract or in tort, to train or supervise its agents and employees. "Absent a duty, there can be no breach, and therefore, no recovery for the plaintiff in negligence." *Vaughn v. Daniels Co.*, 841 N.E.2d 1133, 1143 (Ind. 2011). The Complaint fails to allege that the Twin Creeks Defendants owed Plaintiffs a duty. In fact, no Indiana case has recognized a common law duty owed by a property management company (Kirkpatrick) or a homeowners' association (Twin Creeks) to renters or to private, non-profit corporations (Fair Housing Center) or society at large to ensure compliance with the federal Fair Housing Act, the Civil Rights Act, or the Indiana Fair Housing Act.

Indeed, the Southern District of Indiana has already rejected attempts to assert a negligence claim in this context. This Court held:

> Plaintiff cites to no authority that would establish the presence of a duty to train or supervise employees under the FHA, IFHA, or Rehabilitation Act. Indeed, courts in other jurisdictions have rejected similar claims. *See, e.g. Matarese v. Archstone Pentagon City*, 761 F. Supp. 2d 346, 365 (E.D. Va. 2011) (granting summary judgment on plaintiff's negligence claim predicated on a common law duty to train employees on FHA reasonable accommodations); *Hand v. Gilbank*, 752 N.Y.S.2d 501, 502 (N.Y. Sup. Ct. 2002) (finding that the FHA "was not intended to create a standard of care in negligence litigation"); *Fair Hous. Council of Or. v. Brookside Vill. Owners Ass'n*, No. 3:08-cv-3127, 2012 WL 8017842, at *27-28 (D. Or. Oct. 19, 2012) *adopted*, No. 3:08-cv-03127 2013 WL 1914378 (D. Or. May 8, 2013) (rejecting plaintiff's assertion that the Oregon fair housing statute, which is interpreted consistently with the FHA, "is intended to impose a common law duty on housing developments ... to train their employees in fair housing laws.").

> *5 The Plaintiffs acknowledge that this duty is not recognized by several other courts as stated by the Defendants. Nonetheless, Plaintiffs cite three cases for this same argument, all three of which are wholly inapplicable. Dkt. 77 at 27 (citing *Woods v. Forester*, 884 F. Supp. 1169, 1178 (N.D. Ill. 1995) (holding that a "duty exists to refrain from employing individuals that the employer knows, or should know, are a danger to others."); *McAlister v. Essek Prop. Tr.*, 504 F. Supp. 2d 903, 911 (C.D. Cal. 2007) (Defendants did not contest that they were liable for breach of duty to reasonably accommodate a tenant's disability); *So. Cal. Hous. Rights Ct. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005) (precluding summary judgment for determination on whether reserving parking space was reasonable accommodation and necessary for use and enjoyment of a dwelling)). Thus, the Plaintiffs have failed to allege sufficient factual allegations to state a claim for negligence that is plausible on its face. *Iqbal*, 556 U.S. at 678.

*Fair Hous. Ctr. of Cent. Indiana v. Grandville Coop. Inc.*, No. 116CV00300LJMDML, 2017 WL 75447, at *4–5 (S.D. Ind. Jan. 9, 2017).

In an attempt to avoid dismissal of the negligence claim and in direct contradiction of the case law above, Plaintiffs argue, in conclusory fashion, "the Fair Housing Act establishes the duty owed to Banks," and cite to the Restatement of Torts as having been adopted in Indiana (Pl.'s Br. at 32). Inherently conceding the uphill battle in maintaining a negligence claim on these allegations, Plaintiffs further argue that "Banks was only required to make a 'facially plausible' complaint" in order to have the negligence claim survive. (Pl.'s Br. at 31). Though Plaintiffs' Complaint details the Twin Creeks Defendants' actions in response to complaints about New, Plaintiffs contradict their own Complaint's allegations when Plaintiffs argue: "Defendants' employees and agents, despite being on notice of the multiple, threatening, intimidating and potentially violent actions of New, *did not act to protect* Banks' rights." (Pl.'s Br. at 31)(emphasis added). The Twin Creeks Defendants *did* act. Plaintiffs' own Complaint details the many ways in which the Twin Creeks Defendants acted to curtail New's offensive behaviors. (Complaint ¶¶ 67 – 75, 25.) Simply alleging Plaintiffs own self-serving belief that the Twin Creeks Defendants should have done more is insufficient to withstand a Rule 12

18

motion. For all these reasons, Plaintiffs have failed to state a valid claim for negligence, and therefore, Count VI should be dismissed.

### d. Indiana Fair Housing Act

For purposes of this Motion, all arguments relating to Plaintiffs' claims brought under the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, shall apply equally to claims brought under the Indiana Fair Housing Act, IC 22-9.5-1-1, *et seq.*

## IV.   Conclusion.

Plaintiffs' theories of liability advanced on these pleadings is novel in this jurisdiction and in the Seventh Circuit as a whole. Neither the Seventh Circuit nor any United States District Court within the Seventh Circuit has held that a homeowners' association or property management company's efforts to curtail neighbor harassment would constitute a violation of the FHA, Indiana's counterpart, or the Civil Rights statutes, or support a general negligence cause of action. The facts as pled by the Plaintiffs do not justify creating such a cause of action.

For these reasons and those argued in the Motion, Brief in Support of the Motion, and this Reply, Defendants Kirkpatrick Property Management Company, Inc. and Twin Creeks Homeowners Association, Inc. respectfully request that the Court award judgment on the pleadings in their favor and against Plaintiffs on the First Claim (FHA), Second Claim (Civil Rights, § 1981), Third Claim (Civil Rights, § 1982), Fourth Claim (Indiana Fair Housing Act), and Sixth Claim (Negligence) of the Complaint, and award all other just and proper relief.

19

Respectfully submitted,

*/s/ Crystal S. Wildeman*

Crystal S. Wildeman, IN #26603-82
WOODEN MCLAUGHLIN LLP
25 N.W. Riverside Drive, Suite 310
Evansville, Indiana 47708
812-401-6151
812-401-6444
Crystal.Wildeman@woodenlawyers.com

*/s/ Jere A. Rosebrock*

Jere A. Rosebrock, IN #26566-49
WOODEN MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN  46204-4208
317-639-6151
317-639-6444 FAX
Jere.rosebrock@woodenlaywers.com

Attorneys for Defendants Kirkpatrick Management
Company, Inc. and Twin Creeks Homeowners
Association, Inc.

20

## CERTIFICATION OF TRIAL RULE 5(G) COMPLIANCE & VERIFICATION/CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2020 a copy of the foregoing *Defendants' Reply in Support of Their Motion for Judgment on the Pleadings* was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Jeffrey A. Macey
MACEY SWANSON LLP
445 N. Pennsylvania, Suite 401
Indianapolis, IN  46204

Liza Cristol-Deman
BRANCART & BRANCART
P.O. Box 686
Pescadero, CA  94060

Attorneys for Plaintiffs

and via First Class, U.S. Mail to the following:

Vicki New
3372 Roundlake Lane
Whitestown, IN  46075

Pro Se

/s/ *Crystal S. Wildeman*
Crystal S. Wildeman, IN 26603-82