## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., and DONATA BANKS, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) No. 1:20-cv-01176-TWP-DLP |
| VICKI NEW, KIRKPATRICK MANAGEMENT COMPANY, INC., and TWIN CREEKS HOMEOWNERS ASSOCIATION, INC., | ) ) ) ) |
| Defendants. | ) ) |

**ORDER ON DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS**

This matter is before the Court on Defendants Twin Creeks Homeowners Association, Inc.'s ("HOA") and Kirkpatrick Management Company, Inc.'s ("Kirkpatrick") (collectively the "Association Defendants") Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) (Filing No. 13). Plaintiffs Fair Housing Center of Central Indiana, Inc. ("Fair Housing Center") and Donata Banks ("Banks") (collectively, "Plaintiffs") initiated this lawsuit to bring claims against the Association Defendants and co-defendant Vicki New ("New") for violation of the Federal Fair Housing Act, the Indiana Fair Housing Act, and the Federal Civil Rights Act as well as state law claims for negligence and intentional infliction of emotional distress. The Association Defendants filed an Answer to the Complaint (Filing No. 12) and then moved for judgment on the pleadings (Filing No. 13). For the following reasons, the Motion for Judgment on the Pleadings is **granted in part and denied in part**.

### I.     BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion for judgment on the pleadings, the Court accepts as true the factual allegations in the Complaint and draws all inferences in favor of the Plaintiffs as the non-moving party. *See Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012).

Plaintiff Fair Housing Center is a private, non-profit Indiana corporation that works to ensure equal housing opportunities by eliminating housing discrimination through advocacy, enforcement, education, and outreach. It is the only private, non-profit fair housing agency in Indiana, and its office is located in Indianapolis. Plaintiff Banks and her family are African American. Since July 2016, Banks and her family have rented a single-family dwelling located at 6314 Twin Creeks Drive in Indianapolis. This dwelling is located in the Twin Creeks subdivision and is governed by Defendant HOA (Filing No. 1 at 2).

Defendant HOA is a non-profit corporation located in Indianapolis. The HOA governs approximately 226 dwellings within the communities of Brookstone and Fieldstone, which are collectively known as the Twin Creeks subdivision in Indianapolis. Defendant Kirkpatrick is a for-profit property management firm located in Indianapolis. Kirkpatrick has managed Twin Creeks subdivision on behalf of the HOA since July 2009. Defendant New is a Caucasian woman. From March 2016 through December 2018, New and her husband James New, who is also Caucasian, owned and resided in a single-family dwelling located at 6315 Twin Creeks Drive in Indianapolis. This dwelling is located in the Twin Creeks subdivision, is governed by the Defendant HOA, and is across the street from the dwelling where Banks and her family resided. *Id.* at 2–3.

While New lived at the Twin Creeks subdivision from March 2016 through December 2018, she engaged in a race-based campaign of harassing, taunting, and threatening African

American and Latino residents, guests, and contractors, and she created a racially-hostile environment at Twin Creeks. The Association Defendants were aware of New's race-based harassment, taunts, and threats. *Id.* at 3.

In August 2016, soon after the Banks family moved into Twin Creeks, New began to verbally harass them. New called Banks a "black n----- bitch" and commented that the neighborhood was "better before all of you n----- moved in." During one incident, Banks was inside her home and heard a commotion outside, and when she looked outside, she saw her husband and New arguing. James New and an African American neighbor who lived on the same block also were engaged in the argument. Banks heard New yell that "this neighborhood was so much better without you people." Banks later learned that the incident was started by New yelling at an African American neighbor who was driving in her car. New had yelled, "slow down you n----- bitch." New frequently followed Banks' daughter and other children of color to the bus stop. On several occasions, New called Banks and her daughter using the slur "n----- bitch." *Id.* at 4.

In August 2017, Banks witnessed New yelling at a Latino worker who was inspecting the roof of another Twin Creeks house. New yelled that she "can't stand none of you n------s, fags, and Mexicans." James New then came outside and called Mr. Banks a "n-----," and Banks called the police. On several occasions when Banks' daughter and her friends sat on their front porch, New yelled "shut your stupid mouths up" and other words to that effect. This occurred frequently during the spring of 2018. During a Banks family reunion, New shouted at the visitors, who are African American, to go inside. *Id.*

Banks and her family observed and heard about New's discriminatory treatment of other neighbors based on their national origin and race, which created the hostile environment at Twin Creeks. In 2018, after a Latino couple moved into the house next door to the News' house, Banks

3

observed New yelling at the Latino couple from her yard. New called the Latino woman a "fat bitch" and a "piece of shit who does not deserve to be a mother." During the same incident, New said, "you wouldn't be alive if my grandfather were still alive," and "that f------ Mexican is going to be dead," and she threatened to "wrap a hose around your neck." ([Filing No. 1 at 5](#).)

By the summer of 2016, within only a few months of the News moving into the neighborhood, the HOA was well aware that New frequently harassed, threatened, and intimidated other Twin Creeks residents. In June 2016, the HOA's attorney issued a cease-and-desist letter to the News demanding that New immediately stop telling the community's members, residents, and contractors that she was a member of the HOA board of directors or acting on behalf of the HOA. The letter demanded that New stop any behavior that could be deemed as harassment, bullying, or mistreatment of the community's residents. *Id.* at 13–14.

By September 2016, the HOA was aware that the harassment was specifically targeting minority residents. In another letter to New, dated September 25, 2016, the HOA detailed how, on an almost daily basis, New could be found roaming the neighborhood, trespassing, verbally berating homeowners and residents, and standing in front of her property yelling at neighbors. She was overheard making discriminatory comments directed toward residents, and the letter further mentioned one report by a homeowner that New spoke to a resident using racial epithets and described New as a tyrant pursuing an unrelenting agenda of harassment, discrimination, and bullying. *Id.* at 14.

The September 25, 2016 letter explained to New that the HOA enforced the HOA's rules, covenants, and restriction in various ways including inspections, cease-and-desist letters, and lawsuits. The letter instructed New to stop her abusive behavior and warned that litigation could follow if her behavior did not cease. *Id.*

Banks and her family suffered harassment for more than two years, and during this time period, many residents submitted complaints to the HOA and Kirkpatrick about New's abusive conduct. In August 2018, Banks learned that several other residents of Twin Creeks were meeting with the HOA and Kirkpatrick to discuss the News' discriminatory harassment. Banks attended this meeting. Residents reported that the News used racial slurs and race-based threats of violence toward them. The representatives of the HOA and Kirkpatrick stated that they did not know what they could do to stop the harassment. About two weeks later, a second meeting was held between the residents and the board of directors of the HOA. The HOA's attorney and representatives of Kirkpatrick did not attend this second meeting. *Id.* at 5, 13.

On August 28, 2018, two Indianapolis news stations published stories about the News' harassment of their neighbors at Twin Creeks. The news stories included a video of New threatening and attacking her Latino neighbors. On August 29, 2018, New was arrested and charged with criminal trespassing, battery resulting in bodily injury, and criminal mischief. She posted cash bond and was released from Marion County Jail on September 1, 2018. On August 8, 2019, the charges were dismissed pursuant to a diversion agreement. *Id.* at 5–6.

After these news stories were published, the HOA issued a cease-and-desist letter to New on September 4, 2018. The letter detailed some of the incidents reported to the HOA and asserted that the News' actions were in violation of the HOA's binding covenants, for which enforcement action could be taken. The letter asserted it was a "zero tolerance" demand, meaning that a single incident in violation of the demand would result in legal action against the News. However, New continued to harass Banks and her family until the News sold their house and moved out of Twin Creeks in December 2018. The Association Defendants did not initiate legal action or other enforcement efforts against the News to abate their discriminatory conduct. The Association

5

Defendants had the authority to end the News' discrimination and harassment, but they failed to take prompt action to correct and end the News' discriminatory harassment of and interference with residents of Twin Creeks (Filing No. 1 at 6, 15).

The Association Defendants often told residents of Twin Creeks that there was nothing they could do to help the residents with the discriminatory conduct of New, and the Association Defendants occasionally did not respond at all to complaints. One of the Association Defendants' representatives told Twin Creeks residents at a neighborhood meeting in 2017 that he was tired of receiving phone calls regarding incidents with New, and he was going to start charging for each phone call that he received regarding New. *Id.* at 5, 9–13, 15–16.

The HOA's covenants and restrictions prohibited residents from violating any statute, rule, ordinance, or regulation. They further prohibited residents from engaging in offensive activity that was a nuisance to any other owner or to any other person. To enforce these provisions, the HOA was empowered to initiate any proceeding at law or in equity. *Id.* at 15. Despite having the authority to do so, the HOA failed to enforce the covenants and restrictions to stop the discriminatory conduct of New, yet the HOA did not hesitate to initiate legal proceedings against the News for their failure to pay HOA dues. In March 2017, the HOA filed a complaint in Marion County Superior Court against the News in order to collect their unpaid HOA dues. *Id.*

In August 2018, a resident of Twin Creeks reported New's race-based harassment, intimidation, and threats to the Fair Housing Center. The Fair Housing Center undertook an investigation. It surveyed many residents, completing interviews with over a dozen Twin Creeks residents affected by the discriminatory behavior. During the investigation, Banks complained to the Fair Housing Center that she and her family members had experienced harassment by New at Twin Creeks. The Fair Housing Center diverted substantial resources to counseling residents of

Twin Creeks affected by the discriminatory conduct, investigating the scope of that conduct, and counteracting the effects of that conduct. This included drafting and distributing educational materials to inform residents of Twin Creeks of the protections offered by fair housing laws, including protections against racial harassment by a neighbor. *Id.* at 16–17.

In May 2019, the Plaintiffs initiated administrative proceedings to complain about the discriminatory actions occurring at Twin Creeks. A notice of findings was issued, noting that there was reasonable and probable cause to believe that unlawful discriminatory practices occurred at Twin Creeks. *Id.* at 17. On April 16, 2020, the Plaintiffs filed their federal lawsuit in this Court, asserting claims for violation of the Federal Fair Housing Act, the Indiana Fair Housing Act, and the Federal Civil Rights Act as well as state law claims for negligence and intentional infliction of emotional distress. After the Association Defendants filed their Answer to the Complaint, they filed their Motion for Judgment on the Pleadings.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer, and the pleadings are closed. Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.* Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially

7

plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Like a Rule 12(b)(6) motion, the Court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). The factual allegations in the complaint are viewed in a light most favorable to the non-moving party; however, the Court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (quoting *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

### III.    DISCUSSION

The Association Defendants ask for judgment on the pleadings on each of the claims asserted against them: the Civil Rights Act claim pursuant to 42 U.S.C. § 1981, the Federal Fair Housing Act claim pursuant to 42 U.S.C. § 3601 *et seq.*, the Indiana Fair Housing Act claim pursuant to Indiana Code § 22-9.5, the Civil Rights Act claim pursuant to 42 U.S.C. § 1982, and the state law claim for negligence. The Court will address each of these claims in turn.

**A.    Section 1981 Claim**

The Association Defendants ask the Court to enter judgment on the pleadings on the Plaintiffs' civil rights claim brought pursuant to 42 U.S.C. § 1981. In response, the Plaintiffs assert that they "state a valid claim under Section 1981 of the Civil Rights Act, but agree to voluntarily

abandon this claim, in part because it provides no additional relief that plaintiffs are not already entitled to under the FHA and Section 1982." (Filing No. 29 at 30.) Because the Plaintiffs abandon their Section 1981 claim, the Court **grants** the Association Defendants' Motion as to this claim.

### B.   Fair Housing Act Claims

The Association Defendants argue they are entitled to judgment on the pleadings for the Plaintiffs' Federal Fair Housing Act claim and Indiana Fair Housing Act claim. They do not present separate arguments for the federal claim and the state claim; rather, they advance their arguments, stating that they "apply equally" to both claims (Filing No. 14 at 8 n.1). Therefore, the Court will address the federal and state fair housing act claims together.

The Association Defendants assert that Banks lacks standing to bring fair housing claims against the Association Defendants because the facts clearly establish that Banks rented, rather than owned, her home in Twin Creeks. As a result, there was no contractual relationship and no privity of contract between Banks and the Association Defendants to make Banks a party to the binding covenants of the HOA. The Association Defendants argue that Banks lacks standing to bring these claims, and they owe her no duty to Banks to enforce the HOA covenants.

The Association Defendants further argue that they are not liable to the Plaintiffs for the actions of New, who committed the discriminatory actions. They deny vicarious liability for New's actions because New was not the agent or employee of the Association Defendants. Thus, they are not liable for her actions.

Next, the Association Defendants argue that the fair housing claims fail because the Act does not apply to single-family homes sold or rented by the owner, which is the type of home at issue in this case. Under 42 U.S.C. § 3603(b)(1), "[n]othing in section 3604 of this title (other than subsection (c)) shall apply to--(1) any single-family house sold or rented by an owner."

Furthermore, the Association Defendants assert, they are not "housing providers" subject to the provisions of Section 3604. They are not direct providers of housing, such as a landlord or a real estate company; instead, they are a homeowners association and a property management firm.

The Association Defendants additionally argue that Banks successfully rented a house in Twin Creeks, so she was not refused the right to purchase, rent, or negotiate for housing. Also, Banks was not constructively evicted from her house because of the discriminatory acts, where Banks remained in the house beyond the time when New moved out. The Association Defendants argue they cannot be held liable for tenant-on-tenant harassment because they are not landlords. They assert the allegations fail to support a claim that Banks was discriminated against in the rental of her home or in the provision of services or facilities, and communications were not made that were racially-discriminatory. None of the allegations show coercion, threats, intimidation, or interference on the part of the Association Defendants; instead, the allegations of discrimination concern New's conduct.

The Plaintiffs respond that Banks has standing to bring her claims even without a contractual relationship with the Association Defendants. Banks has not brought a claim for breach of contract, and she is not suing the Association Defendants to enforce the HOA covenants and restrictions. They assert that the Complaint alleges the covenants and restrictions to show that New violated them and the Association Defendants had the authority to enforce them and punish residents for violation of them. The allegations show that the Association Defendants had power to control covenants and restrictions violations, and thus, relate to their direct liability under the Fair Housing Act. Moreover, Banks has standing because she suffered an injury from discriminatory housing practices—an interference with the enjoyment of her home.

The regulations for the Fair Housing Act state that a defendant may be held directly liable for the discriminatory housing practices of a third-party by "failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it." 24 C.F.R. § 100.7 (a)(iii). The Plaintiffs argue that their allegations clearly establish direct liability of the Association Defendants. The allegations state the Association Defendants knew of New's racially-discriminatory conduct and had the authority and power to correct it, but failed to do so. The Plaintiffs assert that their Complaint alleges direct liability against the Association Defendants, so any argument concerning vicarious liability, agents, and employees is inapposite.

Regarding the Association Defendants' argument for the single-family home exception under the Fair Housing Act, the Plaintiffs assert, among other things, that they are bringing their claims pursuant to Sections 3604(c) and 3617, which are not covered by the exception, and thus, the single-family home exception does not apply to bar their fair housing claims. The Plaintiffs also argue that the Fair Housing Act is not limited to "housing providers," but rather applies to anyone who commits a discriminatory housing practice. The Act applies to Association Defendants who affect access to, use of, and enjoyment of housing. Homeowners associations and property management firms affect the use and enjoyment of housing, so they can be liable under the Act for discriminatory housing practices.

The Plaintiffs allege that the Association Defendants are directly liable under the Act for the discriminatory housing practices committed by New that they could have prevented but chose not to prevent: the creation of a racially-hostile environment, racially-discriminatory statements that were made, and threats, intimidation, and interference with Banks' enjoyment of her fair housing rights. The Plaintiffs further allege that one resident of Twin Creeks complained to the

11

Fair Housing Center about the racially-hostile environment and discrimination, and then they moved out because the housing situation was unsafe and unbearable (constructive eviction). The Plaintiffs argue the allegations show the Association Defendants' actions were based on racial discrimination because the Association Defendants took legal action against the News when they simply failed to pay HOA dues, but the Association Defendants did not take legal action against the News when they received complaints about New's race-based conduct.

After reviewing the parties' arguments and the allegations of the Complaint, which the Court must take as true at this stage of the litigation, the Court concludes that the Plaintiffs' arguments and position are well-taken. The Plaintiffs have standing to assert their fair housing claims because they have sufficiently alleged an injury at the hands of the Association Defendants for discriminatory housing practices under a theory of direct liability pursuant to 24 C.F.R. § 100.7. The Act prohibits a broad range of discriminatory housing practices beyond just a refusal to rent or sell a home and constructive eviction, and a defendant may interfere with fair housing rights under Section 3617 even without a constructive eviction. "A person is directly liable for . . . [f]ailing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it." 24 C.F.R. § 100.7 (a)(iii). While it is unclear the level of success the Plaintiffs may have later in this litigation, the allegations are sufficient to allow the fair housing claims to proceed beyond this stage of the litigation. Therefore, the Court **denies** the Motion for Judgment on the Pleadings on the federal and state fair housing claims.

**C.    Section 1982 Claim**

Next, the Association Defendants ask the Court to enter judgment on the pleadings on the Plaintiffs' civil rights claim brought pursuant to 42 U.S.C. § 1982. To state a claim pursuant to

Section 1982, a plaintiff must allege that a defendant interfered with the same right as enjoyed by white citizens "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. The Association Defendants repeat that there are no allegations that they were in any contractual relationship with Banks, and they did not interfere with Banks' rental contract for her Twin Creeks home. If anyone, New, not the Association Defendants, interfered with Banks' housing contract. The Association Defendants argue that the Plaintiffs failed to allege the Association Defendants' actions were racially-motivated. Thus, this claim fails and must be dismissed.

The Plaintiffs respond that Section 1982 is construed broadly to protect not only the purchasing and leasing of property but also the holding of property without discrimination. Section 1982 focuses on the relationship between a defendant's conduct and a plaintiff's property interests, which does not require a contractual relationship between the parties. The Plaintiffs further argue that a defendant's discriminatory intent can be shown by the defendant's discriminatory application of rules. The Plaintiffs argue that they have sufficiently alleged the Association Defendants intentionally interfered with Banks' right to hold property. They were responsible to govern the Twin Creeks subdivision, which included prohibiting violation of statutes and nuisances. Yet, the Association Defendants failed to enforce these housing protections and did not take necessary action to stop New's discriminatory conduct. The allegations note that the Association Defendants did not hesitate to exercise their power to bring legal action against New when she failed to pay her HOA dues, but they chose to not exercise their power to bring legal action against New when she engaged in racial discrimination and harassment that affected Banks' exercise of property rights. A defendant who tolerates a discriminatory, hostile environment but intervenes in non-race related disputes raises the inference of discriminatory intent.

Because the Court must accept as true the factual allegations in the Complaint and draw all inferences in favor of the Plaintiffs as the non-moving party when reviewing this Motion for Judgment on the Pleadings, *see Emergency Servs. Billing*, 668 F.3d at 464, the Court concludes that the Section 1982 claim may proceed. There are sufficient factual allegations to draw an inference that the Association Defendants had discriminatory intent in interfering with Banks' right to hold real property when they initiated legal action against New for failing to pay HOA dues but not pursuing legal action when New engaged in egregious, racially-discriminatory conduct that affected property rights—all when the Association Defendants had the authority and power to intervene. Therefore, the Court **denies** the Motion as to the Section 1982 claim.

**D.**     **Negligence Claim**

Lastly, the Association Defendants argue they are entitled to judgment on the state law negligence claim. Banks brings this negligence claim against the Association Defendants based on the theory that the Association Defendants failed to adequately train or supervise their employees. The Association Defendants assert that Banks must show a duty owed by them to Banks, a breach of that duty, and an injury to Banks caused by that breach. The Association Defendants argue there are no allegations supporting a duty owed to Banks to train or supervise their employees or agents. All conduct complained of was undertaken by New who was not an agent or employee of the Association Defendants. Because there are no allegations of a failure to train or supervise the Association Defendants' employees or agents, the negligence claim must be dismissed.

The Plaintiffs respond that Banks' allegations concern the Association Defendants' failure to train and supervise their employees to ensure that they comply with the Fair Housing Act and applicable regulations. They assert that the allegations are that the Association Defendants' employees were on notice of New's conduct but did not act to protect Banks' rights. The Plaintiffs

14

argue this is actionable under the Fair Housing Act and Section 1982, and the Fair Housing Act establishes the duty owed to Banks.

The Court agrees that the negligence claim must be dismissed. The factual allegations support fair housing claims and a Section 1982 claim, but those statutes and the factual allegations do not support or create an independent, state common law claim for negligence or a general tort duty. "Plaintiff cites to no authority that would establish the presence of a duty to train or supervise employees under the FHA, IFHA, or Rehabilitation Act. Indeed, courts in other jurisdictions have rejected similar claims." *Fair Hous. Ctr. of Cent. Indiana v. Grandville Coop. Inc.*, 2017 WL 75447, at *4 (S.D. Ind. Jan. 9, 2017). Therefore, the Court **grants** the Motion as to the negligence claim.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the Motion for Judgment on the Pleadings (Filing No. 13). The Plaintiffs' Section 1981 and negligence claims against the HOA and Kirkpatrick are **dismissed**. The remaining claims asserted in the Complaint may proceed.

**SO ORDERED.**

Date: 1/20/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Liza Cristol Deman
BRANCART & BRANCART
lcristoldeman@brancart.com

Jeffrey A. Macey
MACEY SWANSON LLP
jmacey@maceylaw.com

Jere A. Rosebrock
DINSMORE & SHOHL LLP
jere.rosebrock@dinsmore.com

Crystal Spivey Wildeman
DINSMORE & SHOHL LLP
crystal.wildeman@dinsmore.com