**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., and DONATA BANKS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-01176-TWP-DLP |
| VICKI NEW, KIRKPATRICK MANAGEMENT COMPANY, INC., and TWIN CREEKS HOMEOWNERS ASSOCIATION, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Twin Creeks Homeowners Association, Inc. ("HOA") and Kirkpatrick Management Company, Inc. ("Kirkpatrick") (collectively, "Defendants") (Filing No. 96). Plaintiffs Fair Housing Center of Central Indiana, Inc. ("Fair Housing Center") and Donata Banks ("Banks") (collectively, "Plaintiffs") initiated this lawsuit to bring claims against the Defendants and co-defendant Vicki New ("New") for violation of the Federal Fair Housing Act, the Indiana Fair Housing Act, and the Federal Civil Rights Act as well as state law claims for negligence and intentional infliction of emotional distress. Following the Court's Order on Defendants' Motion for Judgment on the Pleadings, (Filing No. 60), the Plaintiffs' Fair Housing Act claims and Civil Rights Act claim, ("Section 1982"), were permitted to move forward in this litigation. The Defendants then filed their Motion for Summary Judgment on the remaining claims. For the following reasons, the Court **grants in part and denies in part** the Defendants' Motion.

# I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the Plaintiffs as the non-moving party.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff Fair Housing Center is a private, non-profit Indiana corporation that works to ensure equal housing opportunities by eliminating housing discrimination through advocacy, enforcement, education, and outreach.  It is the only private, non-profit fair housing agency in Indiana, and its office is located in Indianapolis, Indiana.  Plaintiff Banks and her family are Black.  Beginning in July 2016, Banks and her family rented a single-family dwelling located at 6314 Twin Creeks Drive ("6314") in Indianapolis.  This home is located in the Twin Creeks subdivision, which is subject to the HOA at Twins Creek.  Banks and her family moved out of the home and subdivision in April 2020 (Filing No. 1 at 2; Filing No. 108-9 at 6).

Banks rented 6314 from Eleanor Govindaranjoo ("Govindaranjoo"), the owner of 6314, who had previously lived in the home before moving and choosing to rent out her house.  Govindaranjoo listed the home for rent using an advertising feature on Google.  Banks saw the ad and directly replied to Govindaranjoo, expressing her interest in the home.  After viewing the home, Banks and Govindaranjoo came to an oral agreement that Banks and her family could live in the home in exchange for payment of $1,400.00 per month, plus utilities.  Banks did not sign a rental contract or lease agreement with Govindaranjoo.  Banks dealt directly with Govindaranjoo and did not use a broker.  According to Banks, during the period in which she and her family occupied 6314, Govindaranjoo owned only two homes, the one in Twin Creeks and Govindaranjoo's new residence (Filing No. 97-1 at 21–26, 97–99).

Defendant HOA is a non-profit corporation located in Indianapolis.  The HOA governs 226 dwellings within the communities of Brookstone and Fieldstone, which are collectively known as the Twin Creeks subdivision in Indianapolis.  The owners of homes in Twin Creeks are members of the HOA and are subject to the Declaration of Covenants, Conditions, and Restrictions ("CCRs") for Twin Creeks.

Defendant Kirkpatrick is a for-profit property management firm located in Indianapolis. Kirkpatrick managed the Twin Creeks subdivision on behalf of the HOA beginning in 2009 until the HOA terminated its services in January 2021.  While managing the subdivision, Kirkpatrick assigned a community manager to Twin Creeks with the role of maintaining common areas, monitoring residents' compliance with the CCRs, addressing any rules violations, interacting with residents, and communicating with the HOA board (Filing No. 1 at 2–3; Filing No. 12 at 2–3; Filing No. 108-9 at 10; Filing No. 97-14 at 2–3; Filing No. 97-2 at 19–20, 33; Filing No. 108-6 at 10–11, 13–14). Kirkpatrick employee Kevin Patterson ("Patterson") worked as the property manager for the Twin Creeks HOA from 2013 until June or July of 2017.  Vince White ("White") followed Patterson as the property manager for the Twin Creeks HOA until approximately October 2019 (Filing No. 108-6 at 7, 9; Filing No. 108-8 at 7).[1]

Residents of Twin Creeks were subject to the CCRs.  One of the provisions in the CCRs provided, "Nothing shall be done or kept on any Lot or in any Home or on or in any Common Area or any part thereof, which would be in violation of any statute, rule, ordinance, regulation, permit or other validly imposed requirement of any governmental body." (Filing No. 97-10 at 16.) The CCRs also provided,

---

[1] Part of the manager's job was to inspect the subdivision on a regular basis, note violations of the CCRs, and then write letters to homeowners directing them to correct the violations. Patterson conducted these inspections two to three times per month. White conducted them at least once per week (Filing No. 108-6 at 10–11, 22–24; Filing No. 108-8 at 11).

> No noxious, destructive or offensive activity shall be allowed in any Homes, on any Lots or in the Common Area or any part thereof, nor shall anything be done thereon which may be or may become a nuisance to any other Owner or to any other person at any time lawfully residing on the Property.

*Id.* at 16–17.  The HOA board also adopted and issued rules that applied to "all lots, Common Areas and streets within Twin Creeks," which included that "[a]ny noise or activity, which disturbs the serenity of the neighborhood, is prohibited."  (Filing No. 97-9 at 14, 16.)  The CCRs empowered the HOA to enforce the CCRs through various mechanisms, including by initiating "any proceeding at law or in equity . . . either to restrain violation, to compel compliance, or to recover damages."  (Filing No. 97-10 at 25.)

Co-defendant New is a Caucasian woman.  From March 2015 through December 2018, New and her husband James, who also is Caucasian, owned and resided in a single-family dwelling located at 6315 Twin Creeks Drive in Indianapolis.  This dwelling is located in the Twin Creeks subdivision, is governed by the HOA, and is across the street from 6314, the dwelling where Banks and her family resided.  New and her husband were members of the HOA when they owned their home in Twin Creeks (Filing No. 1 at 2–3; Filing No. 12 at 2; Filing No. 97-14 at 2–3; Filing No. 97-1 at 30).

Although New never held a position with the HOA, shortly after moving into Twin Creeks, New began to express her belief that the HOA board was not duly elected pursuant to the governing documents.  She also believed Kirkpatrick was not properly hired to assist the HOA because the board that engaged Kirkpatrick was not duly elected.  New asserted throughout the neighborhood that she was in charge of the HOA, and she spent considerable time while living at Twin Creeks demanding that her neighbors follow the CCRs as she interpreted them (Filing No. 97-4 at 19–20; Filing No. 97-2 at 17, 42; Filing No. 97-5 at 65; Filing No. 97-9 at 21–23).  On December 10,

2015, the HOA's attorney sent a letter to New addressing her belief that the HOA board was illegitimate (Filing No. 97-4 at 19–20).

On June 15, 2016, the HOA's attorney issued a cease-and-desist letter to New because of several concerns relating to her interactions with homeowners, residents, and contractors, and the issues had "gotten bad enough" to cause one homeowner to consider selling her home.  (Filing No. 97-11 at 1–2.) The letter demanded that New immediately stop telling the community's members, residents, and contractors that she was a member of the HOA board or otherwise acting on behalf of the HOA.  The letter further demanded that New stop "any behavior that could be deemed as harassment, bullying, or mistreatment of the community's residents." *Id.* at 2.  The letter concluded that "the Board will have to take legal action if you do not stop telling people that you are acting on behalf of the Board or the Association." *Id.*

Three months later, the HOA's attorney issued another letter to New (sent to New's attorney).  The September 25, 2016 letter noted that "New's behavior toward the owners, residents, HOA Board and property manager [] surpassed a common annoyance and entered into the realm of absurdity, if not illegality." *Id.* at 3.  The letter described New's behavior as antagonistic and abusive and explained, "the entire Twin Creeks community is keenly aware of Ms. New and her concerns." *Id.* The HOA's letter detailed how, on an almost daily basis, New could be found roaming the neighborhood, trespassing, verbally berating homeowners and residents, and standing in front of her property yelling at neighbors.  She was overheard making discriminatory comments directed toward residents, and the letter further mentioned one report by a homeowner that New spoke to a resident using racial epithets and described New as a tyrant pursuing an unrelenting agenda of harassment, discrimination, and bullying. New was constantly found in the neighborhood verbally assaulting owners, and she created an environment where owners were

fearful, confused, and angered.  The letter also explained that many Twin Creeks homeowners would gladly testify against New in court if the need to pursue a restraining order arose (Filing No. 97-11 at 3–4).  The September 25, 2016 letter explained to New that the HOA enforced the HOA's rules, covenants, and restriction in various ways including inspections, cease-and-desist letters, and lawsuits. The letter instructed New to stop her abusive behavior and warned that litigation could follow if her behavior did not cease.  *Id.* at 3–5.

Some of the incidents leading up to this September 25, 2016 letter include:

In August or September 2016, Darryl Crenshaw ("Crenshaw"), a Black homeowner in Twin Creeks, left his garage door open, and when he came out to his garage to get in his car, New was standing in his garage and told him, "you niggers don't belong here".  (Filing No. 108-2 at 3.) On another occasion, when Crenshaw's adult daughter (who is Black) was visiting, New saw Crenshaw's daughter driving down the block from his driveway.  New yelled at Crenshaw to "control that nigger bitch."  When Banks and her husband came outside to see what was going on, New told the Banks and Crenshaw that she "can't stand none of you niggers, fags, and Mexicans." *Id.*  Crenshaw contacted a male employee at Kirkpatrick to report that New was calling him racist names, and the employee responded that he already was aware of New's behavior.  *Id.*

Black resident Latheresa Henderson-Diaz, who lived in the same house that Banks later rented, complained to the HOA at least three times in 2016 about New's harassment. New repeatedly called her a "bitch nigger renter," her teenage daughter a "whore" or "black bitch," and her teenage sons "drug lords".  New even threatened to kill them.  They moved out of the home in April 2016 because of New's harassment (Filing No. 108-5 at 2–4).

On March 31, 2016, Red Door Property Management ("Red Door") emailed Twin Creeks property manager Patterson to share an account of New bullying her neighbor.  Patterson

forwarded the message to the HOA's attorney and president (Filing No. 108-6 at 32–34, 69–70). On April 13, 2016, Red Door again contacted Patterson because New had called Red Door to complain about a neighbor and falsely claimed that she was the incoming head of the HOA.  The email indicated that Red Door had been previously "instructed by the HOA and the Owner to contact the police if [New] steps foot on the property or attempts to make contact with any of [Red Door's] employees or tenants."  *Id.* at 69.

On April 24, 2016, Patterson received a written complaint from a resident that New was in the street yelling at a neighbor.  The resident watched from his porch and started to record the confrontation with his cell phone.  New saw the cell phone and threatened to break it.  *Id.* at 40, 83.  In June 2016, a homeowner complained to Patterson that New's unrelenting harassment had gotten so bad that he had decided to sell his house, which was communicated to the HOA's attorney.  *Id.* at 43–45, 77.

On September 6, 2016, Lizeth Quinonez ("Quinonez"), a Latina homeowner in Twin Creeks, complained to Kirkpatrick that New claimed that her licensed, in-home daycare was "illegal" and referred to a mixed-race family as "pieces of shit who do not belong here." (Filing No. 108-3 at 3–4.)  The Kirkpatrick representative told Quinonez to call the police if New bothered her.  *Id.* at 4.  Then on September 16, 2016, Red Door complained to Patterson that New shared false information to a would-be buyer and let her pit bull loose in the yard of the property during a showing (Filing No. 108-6 at 49–50, 80–81).

Even after the HOA's attorney issued the September 25, 2016 letter to New, New continued to harass her neighbors.  Throughout 2016 and 2017, when Quinonez went outside to get the mail or take care of her lawn, New often was nearby and would tell Quinonez to go back to her country and that she did not belong here. Around March 2017, Kirkpatrick was contacted about this

harassment, but it never returned the telephone call (Filing No. 108-3 at 4–5). In October 2017, Quinonez closed her in-home daycare because of New's harassment and discrimination. Even after Quinonez closed her daycare, New continued to yell at Quinonez and told her to "go back to her country." In mid-2018, Quinonez contacted Kirkpatrick and asked it to take action against New because of her discriminatory conduct. Kirkpatrick responded that it could not do anything. *Id.* at 5.

In March 2017, Luvia Roman ("Roman"), a Latina woman, purchased the house next to New's house. Roman and her family moved into the home, and soon thereafter, New began taking pictures of Roman's family and visitors. Later in March 2017, Roman contacted the HOA to complain about New taking pictures of her family and visitors. The HOA told her that it could not do anything about New's behavior, and Roman should call the police. Roman complained again in August 2017 to a member of the HOA board because New was harassing her family, including making derogatory comments based on her ethnicity (Filing No. 108-4 at 2–3).

Around April 2018, Crenshaw was cutting his neighbor's grass as a favor and at the neighbor's request. New came over to the yard and told Crenshaw that he had no right to be cutting the grass, and she told him that he should "take his black ass home" and called him a "nigger". Around May 2018, Crenshaw called Kirkpatrick to report New's harassment to then-property manager White. White told Crenshaw that the HOA and Kirkpatrick received constant complaints about the News, and White indicated that there was nothing he could do about New's conduct (Filing No. 108-2 at 4).

Banks frequently was the target of New's racially derogatory comments, and Banks often witnessed these comments aimed at her family and neighbors, including "nigger," "stupid black bitches," and "spics". (Filing No. 108-9 at 11–12, 16–17, 19–21.) Around May 2018, New

harassed Banks' visiting relatives who were outside the house.  New told them "to get their black asses back in the house."  *Id.* at 14–15.  Because of New's ongoing harassment, Banks often just stayed inside the house to limit her interaction with New.  Banks even got her mail from her car.  *Id.* at 18.  At some point, Banks received a notice from Kirkpatrick about grass growing in her sidewalk or driveway.  Banks called the number for Kirkpatrick listed on the notice and left a message.  She said that she needed to speak with Kirkpatrick because she was experiencing problems with a harassing neighbor that Kirkpatrick had never addressed.  Kirkpatrick did not return her call ([Filing No. 97-1 at 81](#)–84).

On August 3, 2018, Roman was walking along her driveway, and New shouted at her, berating her and threatening to call the Indiana Department of Child Services to take away her children.  New also threatened to kill Roman's family, saying she would be a "dead Mexican".  New also called their mutual neighbor (Crenshaw) a "nigger".  Roman recorded New's statements with her cell phone.  On August 7, 2018, New approached Roman outside of her house and stated that Roman was a "f------ Mexican" and that she was "going to be dead."  New mentioned wrapping a hose around Roman's neck, called her a "fat bitch" and a "piece of shit," and told her that she did not deserve to be a mother to her child.  Two days later, on August 9, 2018, New shouted at Roman from her porch, "F------ Mexican trash. Go back to Mexico."  Roman recorded the August 7 and 9, 2018 incidents with her cell phone ([Filing No. 108-4 at 4](#)).

On August 26, 2018, New came onto Roman's lawn and pulled up several "no trespassing" signs that Roman had placed there on the advice of police.  New broke the signs over her knee and yelled at Roman and her husband, "touch me and I'll kill you."  Roman recorded this incident on her cell phone and on cameras from her house.  Roman emailed Kirkpatrick property manager White and recounted this latest incident of New's harassment.  The following day, on August 27,

2018, White replied to Roman's email, claiming that he was powerless to make New stop harassing her neighbors.  On August 28, 2018, the local news station picked up the story about New's harassment, and the video of New throwing the "no trespassing" signs at Roman's husband was shown on the news.  *Id.* at 5.

In July 2018, Twin Creeks homeowner Bette Bowman ("Bowman") organized a meeting in her home for residents who were concerned about New's harassment.  The neighbors exchanged stories about New's behavior.  After the meeting, Bowman contacted White to discuss what had been talked about.  Bowman also tried to contact the HOA president but never got a response from him (Filing No. 108-1 at 3–4).  On July 26, 2018, White responded via email to Bowman, acknowledging that New was harassing her minority neighbors, and he recommended that the neighbors band together to deal with New and also to contact the prosecutor's office.  He noted that he could help connect the neighbors because he knew that several of them were tired of New's harassment (Filing No. 97-6 at 37).  In early August 2018, White emailed the HOA board to inform them that the situation with New had "reached a new level."  *Id.* at 39.  He explained that New had been threatening and harassing her neighbors, and he had been contacted by at least six of her neighbors. The HOA board president responded to the email, asserting that they were not aware that New was causing problems for her neighbors, and suggested that if he could get the board members together, they would meet with the homeowners.  *Id.*

White tried to facilitate a meeting between the HOA board and the homeowners who were being harassed. Additionally, White talked with New on August 15, 2018, and during their conversation, New told White that there might be a "dead Mexican" in her yard, and hung up the telephone.  *Id.* at 40–43.  Eleven days later, New had the no trespassing sign incident with Roman and her husband.  Three days after the no trespassing sign incident, and one day after the incident

was shown on the local news, on August 29, 2018, Bowman and the HOA vice president spoke. They scheduled a meeting for the HOA board and concerned residents to discuss New. The meeting was set for August 31, 2018. *Id.* at 45.

As planned, the HOA vice president and concerned residents met on August 31, 2018. The residents were invited to share their experiences with New and discuss potential courses of action. As a result of the meeting, it was agreed that the HOA board would review the CCRs and discuss solutions with its attorney. Shortly thereafter, at another meeting in early September 2018, the residents were informed that the HOA board's attorney was issuing a cease-and-desist letter to New. The residents received a copy of the cease-and-desist letter (Filing No. 97-1 at 117–28, 134).

The HOA's letter to the News, dated September 4, 2018, began by reminding them that the HOA's attorney previously had sent a letter to New discussing her harassing behavior and demanding that her behavior stop at that time. The September 4, 2018 letter went on to explain that, unfortunately, the situation had escalated since the previous letter. The letter detailed some of the incidents reported to the HOA and asserted that New's actions were in violation of the HOA's CCRs, for which enforcement action could be taken. The letter demanded that certain conduct cease and that New must not undertake other specific conduct. The letter asserted it was a "zero tolerance" demand, meaning that a single incident in violation of the demand would result in legal action against the News (Filing No. 97-11 at 6–9).

Banks did not hear of any other incidents between New and the neighbors at Twin Creeks after the September 4, 2018 letter, leading up to New and her husband moving out of Twin Creeks. Banks explained that "after [New] was arrested, she, I think, felt like she had to be in the house. We barely saw her after that." (Filing No. 97-1 at 138.) By December 2018, New and her husband had sold their home and moved from Twin Creeks. *Id.* at 58, 89. Banks and her family remained

in their Twin Creeks home until April 2020 when they moved to the east side of Indianapolis.  *Id.* at 19–20.

During the time that Patterson was the Kirkpatrick property manager for Twin Creeks, he received numerous complaints about New.  However, he never sent New a letter regarding CCRs violations except for a single notice regarding the placement of her garbage cans.  When White was the Kirkpatrick property manager for Twin Creeks, he never sent New a letter regarding complaints against her (Filing No. 108-6 at 30–31; Filing No. 108-8 at 20).  But on March 30, 2017, the HOA did take action against New for financial reasons.  The HOA attempted to remove New and her husband from Twin Creeks by filing a foreclosure action in Marion Superior Court against the News for past due assessments.  The HOA obtained a default judgment against the News and proceeded toward a sheriff's sale, which was scheduled for late September 2017. Just prior to the sheriff's sale, the News satisfied the judgment in full thereby mooting the foreclosure action and remaining as residents in the Twin Creeks neighborhood (Filing No. 97-12).

Less than three months after the HOA initiated the foreclosure action against the News, on June 16, 2017, New filed a small claims action against the HOA's individual board members and the HOA's attorney, alleging violations of the governing documents.  They defended against New's claims and, following the trial in that matter, the court entered judgment against New (Filing No. 97-13 at 1–4; Filing No. 97-2 at 70–71).

On April 16, 2020, the Plaintiffs filed this federal lawsuit in this Court, asserting claims for violation of the Federal Fair Housing Act, the Indiana Fair Housing Act, and the Federal Civil Rights Act as well as state law claims for negligence and intentional infliction of emotional distress (Filing No. 1).[2]  After the Defendants filed their Answer to the Complaint, they filed a Motion for

---

[2] On April 5, 2021, the Court entered default judgment against co-defendant New on each of the claims asserted against her in the Plaintiffs' Complaint.  In the Order, the Court noted that "[t]he docket and filings in this matter

Judgment on the Pleadings, (Filing No. 13), which the Court granted in part and denied in part on January 20, 2021, (Filing No. 60).  In that Order, the Court dismissed the Plaintiffs' Section 1981 claim and negligence claims, leaving the Fair Housing Act claims and the Section 1982 claim intact against the Defendants. *Id.* at 15. The Defendants then filed the pending Motion for Summary Judgment on these remaining claims.

## II.      SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory

---

plainly reflect Ms. New's brazen refusal to participate in the case, fulfill her discovery obligations, submit responsive filings, respond to the Order to Show Cause, and conduct herself in a respectful and cooperative manner." (Filing No. 82 at 4–5.) As a result, the Court noted, New's "conduct warrants entry of default judgment against her." *Id.* at 4.

statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.      DISCUSSION

The Defendants ask the Court to enter summary judgment in their favor on the Plaintiffs' claims asserted against them: the Federal Fair Housing Act claim pursuant to 42 U.S.C. § 3601 *et seq.*, (referred to by Defendants as the "FHA"), the Indiana Fair Housing Act claim pursuant to Indiana Code § 22-9.5, (referred to by Defendants as the "IFHA"), and the Civil Rights Act claim pursuant to 42 U.S.C. § 1982. The Court will first address the fair housing claims and then turn to the Section 1982 claim.

A.    **Fair Housing Act Claims**

The Defendants argue they are entitled to summary judgment on the Plaintiffs' Federal Fair Housing Act claim and Indiana Fair Housing Act claim.  The Defendants' arguments concerning these fair housing claims are presented together, and the Defendants explain in their reply brief, "[a]s Plaintiffs noted, the IFHA is interpreted consistently with the FHA, and therefore, Defendants' arguments apply equally to both," (Filing No. 114 at 7), so the Court will address the federal and state fair housing act claims together.

The Plaintiffs claim that New's racial harassment violated 42 U.S.C. §§ 3604(a), (b), (c) and 3617, and that the Defendants are directly liable for tolerating those violations.  The Defendants present various arguments regarding the fair housing claims, including that Banks rented her single-family home from Govindaranjoo, who did not use a real estate agent or broker and who owned only two homes, the one in Twin Creeks and Govindaranjoo's own residence. Additionally, New was never an employee or agent of the Defendants, and Banks never directly reported any of New's racial harassment to the Defendants.  The Defendants further argue that they did not receive notice of race-based harassment until late July 2018, and they promptly acted to curb the harassment by calling a neighborhood meeting and issuing a cease-and-desist letter in September 2018, which led to the News selling their home and moving out of the neighborhood. The Defendants also assert that they did not discriminate against or have ill intent toward Banks. Furthermore, they argue that New's actions did not impact Banks' access to housing because Banks and her family remained in the Twin Creeks home for many months after the News moved out of the neighborhood, and the Banks family voluntarily moved out of the neighborhood.

The Defendants contend that Section 3604(a), (b), and (c) of the FHA does not apply in this case, so the Plaintiffs' claims should be dismissed on summary judgment.  This section of the FHA makes it unlawful:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
>
> (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604.

Section 3617 of the FHA provides,

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

The Defendants argue that Section 3603 of the FHA provides an exemption that requires dismissal of the Plaintiffs' Section 3604 claims against the Defendants. This exemption states, "Nothing in section 3604 of this title (other than subsection (c)) shall apply to—(1) any single-family house sold or rented by an owner: Provided, That such private individual owner does not own more than three such single-family houses at any one time . . . ."  42 U.S.C. § 3603(b)(1). The Defendants thus argue that Section 3604 does not apply because Banks rented her single-family house from Govindaranjoo who did not own more than three single-family houses.  The

Defendants assert that Section 3604(c)—the exception to the 3603 exemption—does not apply in this case because no notices, statements, or advertisements regarding the sale or rental of a home are at issue in this case. Therefore, the Section 3603 exemption bars the Plaintiffs' Section 3604 claims.

Additionally, the Defendants argue that they are not housing providers because they did not provide housing to Banks or any other resident at Twin Creeks. Rather, the Defendants are a homeowners association and a property manager. The Defendants point to a website of the U.S. Department of Justice to assert that the FHA applies to "direct providers of housing." The Defendants did not own or lease property that was sold or rented to the Plaintiffs, so the Section 3604 claims cannot survive. Furthermore, Section 3604 generally applies only to the acquisition of property, but it may apply in limited circumstances of post-acquisition constructive eviction. *See Bloch v. Frischholz*, 587 F.3d 771, 776–77 (7th Cir. 2009). The Defendants argue that, because Banks was not constructively evicted from her home (*i.e.*, the home was made "unavailable"), Section 3604 cannot provide her relief for the post-acquisition conduct of New. The Defendants further contend that a Section 3617 claim cannot survive because there is no evidence of discriminatory intent on the part of the Defendants. They assert that their decision to pursue litigation against the News for past-due HOA assessments but not to pursue litigation against New for her offensive behavior was not a decision based on race or national origin.

The Defendants assert that, even if the FHA provisions applied in this case, their efforts to address New's behavior were reasonable. New was not an agent or employee of the Defendants, so their power to address her conduct was limited. They contend that they first received notice of race-based discrimination by New in late July or early August 2018, and they promptly organized

17

a neighborhood meeting and thereafter issued the September 2018 cease-and-desist letter to the News, which led to their departure from the Twin Creeks neighborhood in December 2018.

Finally, the Defendants argue that Indiana law does not allow for the remedies that the Plaintiffs seek; a homeowners association cannot impose fines to enforce covenants, and it cannot evict a renter or foreclose on a homeowner because of bad behavior. A homeowners association can impose a lien and foreclose on a house only when a homeowner has not paid assessments. And the HOA in this case did just that in March 2017 when the News failed to pay their HOA assessments. Furthermore, because Banks was a renter in Twin Creeks rather than a homeowner, she was not a member of the HOA, so the HOA owed no duty under the CCRs to Banks.

In response to the Defendants' arguments, the Plaintiffs explain that the FHA is not limited only to "direct providers of housing," and this "Court has already ruled that both the FHA and IFHA 'appl[y] to Association Defendants who affect access to, use of, and enjoyment of housing. Homeowners' associations and property management firms affect the use and enjoyment of housing, so they can be liable under the Act for discriminatory housing practices.'" (Filing No. 107 at 16 (quoting Filing No. 60 at 11).) The Plaintiffs contend that there has been no change in legal authority since the Court's earlier ruling, and the Defendants' reliance on a summary from a Department of Justice website does not warrant a different result.

The Plaintiffs continue,

Defendants also revisit their previous request for this court to excuse their conduct because Ms. Banks resided in a single-family home. This issue, too, was previously disposed by the court, which held that the limited single-family home exemption set forth in 42 U.S.C. § 3603(b) does not apply here. By the express statutory language of § 3603(b), the owner of the single-family home selling or renting her house may be exempt from liability under some circumstances, but not a homeowners association or a management company that affect[s] access to, use of, and enjoyment of housing.

(Filing No. 107 at 17 (internal citations and quotation marks omitted).)

The Plaintiffs assert that the FHA focuses on prohibited acts of discriminatory housing practices rather than on the nature of the actors who commit the acts. Thus, they argue, the fact that the Defendants were not direct providers of housing and that New was not an agent or employee of the Defendants is irrelevant.  The Plaintiffs contend that the regulations concerning the FHA provide for direct liability on the part of the Defendants in this case: "A person is directly liable for . . . [f]ailing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it."  24 C.F.R. § 100.7(a)(1)(iii).  The Plaintiffs argue that this regulation is entitled to great weight and deference.

Concerning the claim brought pursuant to Section 3604(a), the Plaintiffs explain,

> *Plaintiff Donata Banks has not alleged a claim under this section of the FHA*. (See Brief in Opposition to Defendants' Motion for Judgment on the Pleadings, Dkt. 29 at 22.) Accordingly, whether she was constructively evicted from her dwelling is irrelevant. Plaintiff FHCCI, on the other hand, has alleged that it suffered injuries when Vicki New subjected residents to harassment because of race or national origin that caused them to vacate a dwelling. Defendants cannot dispute that Vicki New made housing unavailable to residents like Latheresa Henderson-Diaz through her unrelenting racial harassment that caused them to move out. (Henderson-Diaz Dec. ¶ 11.) Moreover, the Court has already issued default judgment against Vicki New and in favor of FHCCI on this claim. Accordingly, the moving defendants' liability under section 3604 (a) turns on whether (1) they failed to take prompt action to correct and end her discriminatory housing practice; (2) they knew or should have known about that conduct; and (3) they had the power to correct it.  24 C.F.R. § 100.7(a)(1) (iii).

(Filing No. 107 at 20 (emphasis in original).)

The Plaintiffs assert that courts have applied Section 3604(b) of the FHA to hold that creating or maintaining a hostile environment based on race or national origin in connection with a dwelling constitutes a discriminatory housing practice if it unreasonably interferes with the use and enjoyment of the premises.  *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996).  New's harassment of residents based on their race or national origin unreasonably interfered with their

enjoyment of the premises.  The Plaintiffs note that the designated evidence shows many incidents of harassment by New, and Banks and her family changed their behavior to avoid New.  New's conduct was sufficiently severe and pervasive to create a hostile environment at Twin Creeks.  The Plaintiffs explain that the Defendants enforced the CCRs for issues regarding aesthetics in the neighborhood and when the News failed to pay their HOA assessments, but the Defendants did not enforce or act upon violations of the CCRs for issues regarding racial harassment. "As this court previously held, a defendant who tolerates a discriminatory, hostile environment but intervenes in non-race related disputes raises the inference of discriminatory intent. Dkt 60 at 13". (Filing No. 107 at 24.)  This is enough, the Plaintiffs contend, to support a Section 3604(b) claim.

Next, the Plaintiffs contend that Section 3604(c) of the FHA prohibits making a statement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race or national origin, or indicates an intention to make any such preference, limitation, or discrimination. This prohibition relates to both oral and written statements and is not limited to advertisements.  The Plaintiffs argue that New made discriminatory statements based on race and national origin, and

> this Court has issued default judgment against Vicki New and in favor of both plaintiffs under section 3604(c). Accordingly, the moving defendants' liability under section 3604(c) turns on whether (1) they failed to take prompt action to correct and end her discriminatory housing practice; (2) they knew or should have known about that conduct; and (3) they had the power to correct it.

(Filing No. 107 at 25.)

Similarly, the Plaintiffs assert that Section 3617 makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right protected by Section 3604.   The evidence shows that New made threats and intimidated her neighbors, and she interfered with her neighbors' enjoyment of their housing rights.  The Plaintiffs contend that default

judgment has been entered against New on this claim, and the Defendants are directly liable pursuant to 24 C.F.R. § 100.7(a)(1)(iii).

Regarding factual disputes about the Defendants' notice of race-based harassment and discrimination and their response to such notice, the Plaintiffs argue that the evidence shows a different timeline than what the Defendants present. The evidence, the Plaintiffs assert, shows that the Defendants were notified of New's race-based harassment and discrimination well before July 2018. The HOA's attorney sent a letter to New in September 2016, noting that she had been making discriminatory comments directed toward residents, and she had spoken to a resident using racial epithets. The HOA's letter to New described her as a tyrant pursuing an unrelenting agenda of harassment, discrimination, and bullying, and the letter noted that the entire neighborhood was aware of New. The evidence also shows that the Defendants received numerous complaints about New in 2016. Yet, the Defendants failed to enforce the CCRs and pursue legal action against New to curb the racially-discriminatory conduct. The HOA's attorney waited until September 2018 to issue a cease-and-desist letter, and the News decided to move from the neighborhood in December 2018. Whether the Defendants' letter writing was a reasonable and sufficient response to address New's race-based harassment is a factual dispute that should be decided by the factfinder. Furthermore, the Plaintiffs contend, it was concerned neighbors who first organized meetings to address New's behavior, and the HOA did not meet with the neighbors until after the incident between New and Roman had been aired on the local news.

Lastly, the Plaintiffs argue that the Defendants' position that they owed no duty to Banks pursuant to the CCRs because she was a renter rather than a homeowner is misplaced and unavailing. The Plaintiffs assert that the Court already rejected this argument from the Defendants.

Donata Banks is not suing the HOA for enforcement of the CC&Rs. Rather, the CC&Rs are relevant here because they help define the conduct that violates the

rules and the scope of defendants' powers to control such conduct. The scope of those powers is relevant to the third element under the direct liability standard – whether defendants had the requisite power to correct New's conduct. 24 C.F.R 100.7(a)(iii).

(Filing No. 107 at 31.)

The legal arguments raised by the parties on summary judgment were raised during the parties' prosecution of the Motion for Judgment on the Pleadings, and the Court allowed the Plaintiffs' fair housing claims to proceed beyond that stage of the litigation.  Thus, at this juncture of the litigation, the designated evidence—not just the pleadings alone—must provide support to the claims.  As long as designated evidence supports the claims, they may proceed.  Concerning the legal issues raised again by the parties, the Court briefly notes that the FHA does not limit its application strictly to "direct providers of housing" as the Defendants contend.  It applies to those who affect access to, use of, and enjoyment of housing, and the Defendants in this case certainly can affect the use and enjoyment of housing.  Furthermore, the exemption for Section 3604 claims provided by Section 3603(b)(1) does not apply in this case.  It appears from the statutory language of the exemption that it applies to protect owners of single-family homes who sell or rent those homes under specific circumstances.  The Defendants in this case are not owners of single-family homes who sell or rent those homes, so the exemption does not apply to these Defendants.

The regulations pertaining to the FHA plainly state, "A person is directly liable for . . . [f]ailing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it." 24 C.F.R. § 100.7(a)(1)(iii). The Seventh Circuit has explained that "the Supreme Court has nonetheless recognized that HUD's views about the meaning of the FHA are entitled to 'great weight.'" *Bloch*, 587 F.3d at 781.  Giving weight to this regulation, the Court is not persuaded that the Defendants are entitled to summary judgment on the basis that New was

not an employee or agent of the Defendants and that the Defendants owed no duty to Banks (a renter) under the HOA's CCRs.  The Plaintiffs are not suing for breach of contract or to enforce the CCRs; rather, the CCRs help define the conduct that violates the rules and the scope of the Defendants' power to control such conduct, which pertains to whether the Defendants had the power to correct New's conduct.  Likewise, the Court is not persuaded by the Defendants' argument that Banks never directly reported New's conduct to the Defendants.  The regulation imposes liability where a defendant "knew or should have known of the discriminatory conduct," but it does not articulate who must provide that knowledge to the defendant.

Furthermore, the Court is not persuaded that the Defendants are entitled to summary judgment on the basis that some of the remedies proposed by the Plaintiffs—imposing fines, restricting voting rights of HOA members, or eviction/foreclosure—were not options available to the Defendants.  The allegations and the designated evidence support a possible conclusion that the Defendants had the power and authority under the CCRs to initiate legal action against a homeowner such as New to curb discriminatory and harassing conduct that was occurring at Twin Creeks.  And the allegations and the designated evidence indicate that the Defendants did not pursue such an available "remedy" to address New's discriminatory and harassing conduct.

The Court now turns to the various provisions of the FHA pursuant to which the Plaintiffs bring their claims.  The Plaintiffs explicitly noted that Plaintiff Banks has not alleged a claim under Section 3604(a) of the FHA; rather, Plaintiff Fair Housing Center alleged that it suffered injuries when New subjected residents to harassment because of race or national origin that caused the residents to vacate a dwelling.  In a footnote in their response brief, the Plaintiffs allege that Fair Housing Center's claim stems from the damage it suffered from the diversion of its resources to investigate the Defendants' practices and the frustration of its mission (Filing No. 107 at 20).

23

However, the Plaintiffs did not designate any evidence of injury or damage to Fair Housing Center to support their allegation. The Seventh Circuit has made it abundantly clear that the "court is not required to scour the record in search of evidence to defeat a motion for summary judgment," *Ritchie*, 242 F.3d at 723, and "[s]ummary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (internal citation and quotation marks omitted). Because the Plaintiffs explicitly noted that Plaintiff Banks has not brought a claim pursuant to Section 3604(a), and because they have not designated any evidence of damage or injury to Fair Housing Center, the Defendants are entitled to summary judgment on any FHA claim based upon Section 3604(a).

Concerning the Plaintiffs' claim brought under Section 3604(c) of the FHA, the Plaintiffs base this claim on the discriminatory statements made by New. However, there is no evidence that New's statements were made with respect to the sale or rental of a dwelling, and there is nothing that raises even an inference that New's statements were made in connection with the sale or rental of a dwelling. In order for Section 3604(c) to apply to a statement, that statement must be made with respect to the sale or rental of a dwelling. *See White v. HUD*, 475 F.3d 898, 904 (7th Cir. 2007); *Small v. Anchorage Homeowners Ass'n, LLC*, 2019 U.S. Dist. LEXIS 47842, at *14–15 (S.D. Ind. Mar. 21, 2019). The regulation concerning this statutory provision makes it even more abundantly clear that the statement must be connected to the sale or rental of a dwelling in order to give rise to liability: "The prohibitions in this section shall apply to all written or oral notices or statements by a person engaged in the sale or rental of a dwelling." 24 C.F.R. § 100.75(b). Because the evidence does not indicate that New's statements were made with respect

to the sale or rental of a dwelling, the Defendants are entitled to summary judgment on any FHA claim based upon Section 3604(c).

Section 3604(b) of the FHA protects against, among other things, a hostile housing environment. Additionally, Section 3604(b) claims are not limited to constructive eviction situations alone. *See Bloch*, 587 F.3d at 779–81. Section 3617 makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right protected by Sections 3603, 3604, 3605, or 3606. A Section 3617 claim can exist without a violation of Section 3604 and may stand independently on its own. *Id.* at 781–82. "[Section] 3617 reaches a broader range of post-acquisition conduct. A claim for coercion, intimidation, threats, and interference with or on account of plaintiff's § 3604 rights does not require that the plaintiff actually vacate the premises." *Id.* at 782. The Defendants have asserted that Banks and her family did not vacate the house in Twin Creeks and remained there until well after New and her husband had moved out. However, this fact does not defeat the claim brought pursuant to Sections 3604(b) and 3617.

The evidence designated by the parties could permit a reasonable factfinder to conclude that a hostile housing environment based upon race and national origin existed at Twin Creeks. For years, New openly and brazenly harassed and verbally assaulted her neighbors based upon race and national origin. The designated evidence also could permit a reasonable factfinder to conclude that New's conduct, intimidation, and threats interfered with the Banks' enjoyment of their housing rights.

Regarding the Defendants' direct liability for New's conduct pursuant to 24 C.F.R. § 100.7(a)(1)(iii), the Defendants point to designated evidence and assert that they did not know of any race-based harassment until late July or early August 2018, and then they promptly acted to

curb New's conduct.  The Plaintiffs point to other designated evidence that supports a conclusion that the Defendants knew about New's race-based harassment in September 2016.  The Defendants contend that their letter-writing efforts were a reasonable response to New's racial harassment. The Plaintiffs point to evidence that the CCRs gave the Defendants authority to pursue legal action against New to curb her race-based harassment, and they failed to take such legal action against her.  The Defendants assert that there is no evidence of discriminatory intent on the part of the Defendants.  The Plaintiffs assert the fact that the Defendants pursued legal action against New and her husband when they did not pay their HOA assessments, but the Defendants did not pursue legal action against New for her race-based harassment, raises an inference of discriminatory intent on the part of the Defendants.  These factual disputes supported by evidence designated in the record should be decided by the factfinder and preclude entry of summary judgment for the Defendants on the FHA claim under Sections 3604(b) and 3617.

Based upon the foregoing analysis, the Court **grants** summary judgment in favor of the Defendants on the FHA claim founded upon Sections 3604(a) and 3604(c) but **denies** summary judgment on the FHA claim founded upon Sections 3604(b) and 3617.  To the extent the Plaintiffs' Indiana Fair Housing Act claim is premised on Sections 3604(b) and 3617 liability, that state claim also may proceed beyond the summary judgment stage.

**B.**     <u>**Section 1982 Claim**</u>

The Defendants assert that they are entitled to summary judgment on the Plaintiffs' Section 1982 claim because there is no evidence that the Defendants had any intent to discriminate against Banks on the basis of her race.  Any race-based discriminatory conduct was performed by New and her husband, and Banks did not report racial harassment to the Defendants.  The Defendants' conduct did not impair Banks' ability to exercise her property rights.  Furthermore, the Defendants

argue, the Section 1982 claim fails because Banks cannot show that any discrimination related to the making or enforcing of a contract. Banks was not denied the right to lease the house at Twin Creeks, and she voluntarily moved from the house months after New already had left the neighborhood. The CCRs cannot serve as a contract to create liability to Banks because she was not a homeowner subject to the CCRs, and she was not in a contractual relationship with the Defendants through the CCRs.

In response, the Plaintiffs contend that Section 1982 provides that all citizens shall have the same rights as enjoyed by white citizens "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. The Plaintiffs point out that, unlike Section 1981 of the Civil Rights Act, the word "contract" does not appear in Section 1982. Section 1982's scope is not limited to discrimination in contracts alone. Section 1982 has been construed to prohibit discrimination based on race in a broad range of property rights, including rentals, sales, services related to property, and the right to hold property. Section 1982 should be broadly construed to effectuate the remedial purposes of the statute to "protect not merely the enforceability of property interests acquired by black citizens but also their right to acquire and use property on an equal basis with white citizens." *City of Memphis v. Greene*, 451 U.S. 100, 121 (1981).

The Plaintiffs reiterate that Banks rented a house in a subdivision that was governed by the HOA and managed by Kirkpatrick. The Defendants' failure to stop New from engaging in racial harassment when they learned of it in 2016 interfered with Banks' rights to enjoy her home under the terms of her rental because the Defendants' tolerance of the harassment altered the terms and conditions of her rental and deprived her of the right to enjoy her dwelling in the same manner as white residents. This, the Plaintiffs contend, is sufficient evidence to support a claim under Section 1982. Additionally, the Plaintiffs assert, the Defendants' decision to enforce the CCRs for non-

27

race-related issues while not enforcing the CCRs for race-related issues is evidence of discriminatory intent to support the Section 1982 claim.

The Plaintiffs' argument is well-taken.  Section 1982 claims are not limited to the context of a contractual relationship to buy or lease property as suggested by the Defendants. And as discussed in the section above concerning the fair housing claims, Banks' rights to use and enjoy her property were impaired, and there is evidence that supports an inference—which should be decided by the factfinder—that the Defendants had discriminatory intent because they pursued legal action against the News for failure to pay HOA assessments but did not pursue legal action against New for her racial harassment. The Court concludes that summary judgment is not warranted on the Section 1982 claim.

## IV.    CONCLUSION

For the reasons discussed above, the Defendants' Motion for Summary Judgment (Filing No. 96) is **GRANTED in part and DENIED in part**. It is undisputed that New's discriminatory conduct was outrageous. In construing the record in the Plaintiff's favor, as the Court must do, the designated evidence and the factual disputes between the parties preclude entry of summary judgment on Plaintiffs' FHA claim (and corresponding IFHA claim) founded upon Sections 3604(b) and 3617,  and the 1982 claim.  Summary judgment, however, is granted on the Plaintiffs' FHA claim founded upon Sections 3604(a) and 3604(c) and those claims are **dismissed**.

The FHA claim (and corresponding IFHA claim) founded upon Sections 3604(b) and 3617 **may proceed** toward settlement or trial as well as the Section 1982 claim.

**SO ORDERED.**

Date:  12/17/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

28

DISTRIBUTION:

Liza Cristol Deman
BRANCART & BRANCART
lcristoldeman@brancart.com

Jeffrey A. Macey
MACEY SWANSON LLP
jmacey@maceylaw.com

Vicki New
P.O. Box 821
Zionsville, IN 46077

Jere A. Rosebrock
DINSMORE & SHOHL LLP
jere.rosebrock@dinsmore.com

Crystal Spivey Wildeman
DINSMORE & SHOHL LLP
crystal.wildeman@dinsmore.com

Alyson Marie St. Pierre
DINSMORE & SHOHL LLP
aly.stpierre@dinsmore.com